NELSON, WARDEN *v.* GEORGE

No. 595.   Argued March 31, 1970—Decided June 29, 1970

*Louise H. Renne,* Deputy Attorney General of California, argued the cause for petitioner. With her on the briefs were *Thomas C. Lynch,* Attorney General, *Albert W. Harris, Jr.,* Assistant Attorney General, and *Edward P. O'Brien,* Deputy Attorney General.

*George A. Cumming, Jr.*, by appointment of the Court, 397 U. S. 901, argued the cause and filed a brief for respondent.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted the writ in this case to consider whether the respondent, presently confined in California under a state conviction, may utilize the federal courts in California to test the validity of a North Carolina sentence before beginning to serve that sentence and while under a detainer filed by North Carolina. Respondent claims the sentence yet to be served in North Carolina is "consecutive" under *Peyton* v. *Rowe,* 391 U. S. 54 (1968). However, since his petition challenges the present effect being given the North Carolina detainer by the California authorities, particularly with respect to granting him parole, we have concluded that as to that claim respondent failed to exhaust his state remedies and accordingly do not reach the question for which the writ was granted.

The record discloses that on April 27, 1964, John Edward George was convicted on a plea of guilty in a California court of first-degree robbery. He began serving his sentence of five years to life at San Quentin.[1] Following his conviction, detainers were filed in California by the States of Kansas, Nevada, and North Carolina, on June 4, 10, and 11, 1964, respectively.

Exercising his right under Article III (a) of the interstate "Agreement on Detainers," [2] George requested temporary release to stand trial on the underlying robbery charge pending in North Carolina. Accordingly, on July 20, 1966, he was released to North Carolina author-

---

[1] Under California law the sentence for first-degree robbery is an indeterminate five years to life sentence in the discretion of the California Adult Authority. Cal. Pen. Code § 213.

[2] Cal. Pen. Code § 1389 (Supp. 1968).

ities and transported there to stand trial. The North Carolina trial was held, and on February 8, 1967, George was convicted and sentenced to imprisonment for 12 to 15 years. The conviction was thereafter affirmed, *State* v. *George,* 271 N. C. 438, 156 S. E. 2d 845 (1967).

Following the North Carolina trial George was returned to San Quentin to complete service of his California sentence. On April 14, 1967, the clerk of the Gaston County Superior Court addressed a letter to the Records Officer at San Quentin advising that George was "wanted at the termination of his imprisonment there for return to this jurisdiction to serve the sentence imposed in the Superior Court of Gaston County, North Carolina." The Warden of San Quentin acknowledged the detainer, indicating that it was "noted in our records."

George then brought a petition for habeas corpus in the United States District Court for the Northern District of California in which he sought to attack not his California conviction, for which he was then incarcerated, but the North Carolina conviction for which the detainer had been filed. The District Court denied the application by order dated March 1, 1968, on the ground that *McNally* v. *Hill,* 293 U. S. 131 (1934), foreclosed habeas corpus relief on the North Carolina conviction while George was still in custody under the prior California judgment.

George filed a petition for rehearing in the District Court in which he argued that even though he was actually serving time in a California jail and thus not technically serving his North Carolina sentence, habeas corpus was not foreclosed since the North Carolina detainer operated as a form of constructive custody. In support of his contention he drew upon the language in *Arketa* v. *Wilson,* 373 F. 2d 582 (C. A. 9th Cir. 1967), to the effect that the strict rule of *McNally* v. *Hill* had been somewhat

eroded by this Court's subsequent decisions in *Ex parte Hull,* 312 U. S. 546 (1941), and *Jones* v. *Cunningham,* 371 U. S. 236 (1963), and that "it appears that there are situations in which the writ can be used to free a petitioner from a certain type of custody, rather than from all custody." *Arketa* v. *Wilson, supra,* at 584. George argued that the North Carolina warrant was "a form of custody" since it affected his custodial classification and probability of parole on his California sentence.[3] On March 20, 1968, the District Court denied the petition for rehearing and George appealed to the Court of Appeals for the Ninth Circuit.

Our decision in *Peyton* v. *Rowe* intervened. In that case we overruled *McNally* v. *Hill,* 293 U. S. 131 (1934), and held that a state prisoner serving consecutive sentences in the forum state is "in custody" under each sentence for purposes of jurisdiction for collateral attack under 28 U. S. C. § 2241 (c)(3),[4] thus permitting a federal habeas corpus action to test a future state sentence while he is serving an earlier sentence. In *Peyton* v. *Rowe* the consecutive sentences were imposed by the forum State, and the sentences were being served in that State's prison. Unlike the case now before us, in such a

---

[3] App. 26.

[4] "§ 2241. Power to grant writ.

"(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

.            .            .            .            .

"(c) The writ of habeas corpus shall not extend to a prisoner unless—

.            .            .            .            .

"(3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . ."

single-state situation the challenge to the continuing vitality of *Ahrens* v. *Clark*, 335 U. S. 188 (1948), does not arise. See *Word* v. *North Carolina*, 406 F. 2d 352 (C. A. 4th Cir. 1969).[5]

As we have noted, having named the Warden of San Quentin as the respondent in his amended petition to the Federal District Court in California and having had his petition refused, George sought rehearing. In that application George alleged that the California authorities had imposed upon him a "form of custody" because of the North Carolina detainer. Specifically, he alleged

[5] In that case Chief Judge Haynsworth, expressing the views of the majority of the Court of Appeals for the Fourth Circuit sitting *en banc*, concluded that *Ahrens* v. *Clark* was a venue decision, and that the physical presence of the petitioner within the district was not an invariable requirement if rigid adherence to the rule would leave one in prison without an effective remedy. The legislative history of the 1966 amendments to 28 U. S. C. § 2241 (d) (1964 ed., Supp. V) suggests that Congress may have intended to endorse and preserve the territorial rule of *Ahrens* to the extent that it was not altered by those amendments. See H. R. Rep. No. 1894, 89th Cong., 2d Sess., 1–2 (1966). See also S. Rep. No. 1502, 89th Cong., 2d Sess. (1966). Those changes were made by Congress, of course, prior to our decision in *Peyton* v. *Rowe;* necessarily Congress could not have had the multistate problem with which we are now confronted in mind. Whether, in light of the legislative history of § 2241 (d) and the changed circumstances brought about by *Peyton* v. *Rowe,* the rigor of our *Ahrens* holding may be reconsidered is an issue upon which we reserve judgment.

However, we note that prisoners under sentence of a federal court are confronted with no such dilemma since they may bring a challenge at any time in the sentencing court irrespective of where they may be incarcerated. 28 U. S. C. § 2255. It is anomalous that the federal statutory scheme does not contemplate affording state prisoners that remedy. The obvious, logical, and practical solution is an amendment to § 2241 to remedy the shortcoming that has become apparent following the holding in *Peyton* v. *Rowe.* Sound judicial administration calls for such an amendment.

that the mere presence of the detainer adversely affected the probability of his securing parole and the degree of security in which he was detained by state authorities. California denies that the existence of the detainer has any consequences affecting his parole potential or custodial status.

Since the Full Faith and Credit Clause does not require that sister States enforce a foreign penal judgment, *Huntington* v. *Attrill,* 146 U. S. 657 (1892); cf. *Milwaukee County* v. *M. E. White Co.,* 296 U. S. 268, 279 (1935), California is free to consider what effect, if any, it will give to the North Carolina detainer in terms of George's present "custody." [6] Because the petition for rehearing raised precisely such a challenge to the California "custody," a matter that has not yet been presented to the California courts, we conclude that respondent George has not yet exhausted his California remedies. See *Ex parte Royall,* 117 U. S. 241 (1886).

Respondent insists that the very presence of the North Carolina detainer has and will continue to have an adverse impact on California's consideration of his claim for parole. Therefore, the United States District Court in California should retain jurisdiction of the petition for habeas corpus relief pending respondent's further application to the California courts for whatever relief, if any, may be available and appropriate if he establishes his claim that North Carolina's detainer interferes with relief that might, in the absence of the detainer, be granted by California. We affirm the judgment of the

---

[6] We are not here concerned with the scope of California's ultimate duty, imposed by Art. IV, § 2, cl. 2, of the Constitution, to extradite persons wanted for trial or execution of sentence in a sister State. We note only that, until the obligation to extradite matures, the Full Faith and Credit Clause does not require California to enforce the North Carolina penal judgment in any way.

Court of Appeals to the extent it finds jurisdiction in the District Court to consider respondent's claims with respect to the impact of the detainer if respondent elects to press those claims after he exhausts his remedies in the California courts.

*Affirmed.*

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.

MR. JUSTICE HARLAN, with whom MR. JUSTICE MARSHALL joins, concurring.

I join the Court's opinion with the following observations. First, I do not understand the Court to suggest that respondent's failure to exhaust state remedies with respect to his claim that California is giving a constitutionally impermissible effect to his North Carolina conviction, rendered it improper for the federal courts to consider his challenge to the validity of the North Carolina conviction to the extent that he had exhausted North Carolina remedies with respect thereto. Second, agreeing with the reasons given by the Court for not reaching the propriety of the Court of Appeals' resolution of respondent's challenge to the North Carolina conviction, I would dismiss that part of the writ as improvidently granted. Third, pending the congressional action that the Court's opinion envisages, I think it not inappropriate to leave undisturbed such conflicts as exist between the decision of the Court of Appeals in the present case and decisions in other circuits, see *Word* v. *North Carolina,* 406 F. 2d 352 (C. A. 4th Cir. 1969); *United States ex rel. Van Scoten* v. *Pennsylvania,* 404 F. 2d 767 (C. A. 3d Cir. 1968), respecting the proper treatment of habeas corpus claims such as those involved in respondent's challenge in the California courts to the validity of his North Carolina conviction.

Mr. Justice Douglas, dissenting.

This California prisoner is seeking to challenge by federal habeas corpus the constitutionality of his conviction in North Carolina, the sentence for which he must serve when he finishes his California term. The infirmities of the North Carolina judgment that he alleges relate to the absence of a speedy trial and to the knowing use of perjured testimony. North Carolina filed a detainer against him in California; and it is that detainer, not the North Carolina judgment, that the Court uses to avoid decision on the basic issue raised in the petition. The petition for habeas corpus stated, "It is the North Carolina Supreme Court decision that is under attack here." The only reference to a detainer made in the petition was to the detainer filed prior to his return to North Carolina for trial. The reference to the detainer filed after his North Carolina conviction was made in his petition for rehearing. The District Court had dismissed the petition before *Peyton* v. *Rowe,* 391 U. S. 54, was decided; and in his argument for a rehearing the prisoner sought to distinguish *McNally* v. *Hill,* 293 U. S. 131, which *Peyton* v. *Rowe* overruled, by arguing that his case was different because the North Carolina detainer was being used to his disadvantage in California. Both the petition for habeas corpus and the petition for rehearing were *pro se* products. Thus the false issue got into the case.

The Court holds that the challenge of the North Carolina judgment may not yet be made in California because the prisoner has not yet shown under California law whether the existence of the North Carolina detainer can affect or is affecting his parole potential or custodial status and therefore that he has not exhausted his remedies under 28 U. S. C. § 2254 (1964 ed., Supp. V).

The remedies with which 28 U. S. C. § 2254 (1964 ed., Supp. V)[1] is concerned relate to those which would remove the infirmities in the North Carolina judgment, making unnecessary federal intervention. Plainly, California can supply no such remedies.

The remedies to which the Court adverts are of a wholly different character—they concern California procedures for correcting any improper use in California of North Carolina's judgment. They are wholly irrelevant to the reasons why we held in *Peyton* v. *Rowe* that a state prisoner serving one sentence may challenge by federal habeas corpus the constitutionality of a second state sentence scheduled for future service. We ruled that if prisoners had to wait until the first sentence was served before the constitutionality of the second could be challenged, grave injustices might be done:

> "By that time, dimmed memories or the death of witnesses is bound to render it difficult or impossible to secure crucial testimony on disputed issues of fact. . . . To name but a few examples [of prejudice resulting from the kind of delay *McNally* imposes], factual determinations are often dispositive of claims of coerced confession . . . ; lack of competency to stand trial . . . ; and denial of a fair trial . . . . Postponement of the adjudication of

---

[1] "(b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, *the question presented.*" (Italics added.)

such issues for years can harm both the prisoner and the State and lessens the probability that final disposition of the case will do substantial justice." 391 U. S., at 62.

If the prisoner was seeking to escape the rigors of the detainer filed by North Carolina, the exhaustion of California remedies would of course be proper. But the gravamen of the petition for habeas corpus concerned the validity of North Carolina's judgment and that is "the question presented" within the meaning of 28 U. S. C. § 2254 (1964 ed., Supp. V).

The Court of Appeals, 410 F. 2d 1179, did not decide that only California, not North Carolina, could pass on the merits of the petition, *viz.*, on the validity or invalidity of the North Carolina judgment. It emphasized that there were practical difficulties whichever forum were chosen. *Id.*, at 1182. Trying the issues in California would put a burden on North Carolina prosecutors and witnesses. Trying the issues in North Carolina would entail problems of expense and security insofar as the prisoner's appearance there was needed. The fact that the federal court in California has "jurisdiction," it ruled, does not mean that it could not transfer the cause to the federal court in North Carolina.[2]

---

[2] See 28 U. S. C. § 1404 (a); *Word* v. *North Carolina,* 406 F. 2d 352.

In H. R. Rep. No. 1894, 89th Cong., 2d Sess., 1–2, it is stated:

"Section 2241 of title 28, United States Code, vests jurisdiction to entertain habeas corpus applications only in the district court for the district in which the prisoner is confined (*Ahrens* v. *Clark,* 335 U. S. 188). Further, since there is no other forum '. . . where it might have been brought,' the application may not be transferred to a different district pursuant to the provisions of section 1404 (a) of title 28, United States Code (*Hoffman* v. *Blaski,* 363 U. S. 335)."

See also S. Rep. No. 1502, 89th Cong., 2d Sess. These reports are concerned with the 1966 amendment to § 2241, which permits the

The Court of Appeals left open for the informed discretion of the District Court the question of how and where the prisoner may be heard on the constitutionality of the North Carolina judgment. I would affirm the Court of Appeals and reserve for another day the question whether the application could be transferred to North Carolina for hearing.

---

district court in whose district a habeas petitioner was convicted to consider the habeas petition even though the habeas petitioner is incarcerated outside the jurisdiction of that district court so long as the habeas petitioner is incarcerated within the State in which the district court sits. The 1966 amendment thus solves the problem posed by *Ahrens* but only where the district of his incarceration and the district in which he was convicted are in the same State. Section 2241, as construed in *Ahrens,* was thus left unaffected where the districts involved are in different States.