Benjamin J. Wm. WARREN, Petitioner,

v.

Marvin R. HOGAN, Warden, U. S. Penitentiary, Lewisburg, Penna., and the State of New York, Respondents.

No. 73 Civ. 5121.

United States District Court, S. D. New York.

March 15, 1974.

———◇———

Benjamin J. Wm. Warren, pro se.

Louis J. Lefkowitz, Atty. Gen., of N. Y., for respondents; Arlene R. Silverman, Asst. Atty. Gen., of counsel.

GURFEIN, District Judge:

*Nature of Application*

The petitioner, presently incarcerated in the United States Penitentiary, Lewisburg, Pennsylvania, makes application to this Court by petition for a writ of habeas corpus for a new trial or for modification of the indeterminate sentence, not to exceed 20 years, imposed by a New York State court after a plea of guilty to the charge of first degree Arson on May 6, 1971. (Penal Law, Sec. 150.15 (McKinney 1967)).

*Jurisdiction*

 Petitioner challenges the validity of the detainer lodged against him by the State of New York. He does not contest the validity of his federal sentence. Under the rationale of Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L. Ed.2d 426 (1968), a prisoner is not precluded from seeking habeas relief as to a

sentence scheduled for future service. This overruling of the prematurity doctrine of McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934), permits a prisoner, as in the case here, to challenge the longer of two concurrent sentences, Lydy v. Beto, 399 F.2d 59 (5 Cir. 1968), and has enabled a petitioner held in one state to attack a detainer lodged against him by another state, George v. Nelson, 410 F.2d 1179 (9 Cir. 1969), aff'd, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970).

Petitioner commenced this habeas corpus action in the United States District Court for the Middle District of Pennsylvania, the district in which he is currently incarcerated. On the authority of Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), that court concluded that jurisdiction was properly founded in the Southern District of New York as the court located nearest the site of the underlying controversy, and transferred the case pursuant to 28 U.S.C. § 1404(a).

*Exhaustion of State Remedies*

Petitioner appears to have complied with the requirement of 28 U.S.C. § 2254(b) that he exhaust his state court remedies before presenting his claim to the Federal Court. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

He appealed his conviction and it was affirmed. Leave to appeal to the New York Court of Appeals was denied on November 3, 1972. Petitioner did not apply for a writ of certiorari to the United States Supreme Court.

There was state court exhaustion of the specific subject matter raised in this collateral attack, Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); United States ex rel. Nelson v. Zelker, 465 F.2d 1121 (2 Cir.), cert. denied, 409 U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972), as an examination of respondent's and petitioner's briefs to the Appellate Division indicate that the basic issues raised here, coercion of the guilty plea by prosecutorial suppression of exculpatory evidence and overindictment and the abuse of judicial discretion in sentencing, were duly raised in the state courts.

Petitioner does, however, raise one claim which he had not previously advanced in the state courts. He now claims that by vacating his state sentence and by releasing him to federal authorities, the State of New York has waived jurisdiction over him and is without power to require him to return to New York to serve his state sentence. With respect to this claim, petitioner has failed to exhaust his remedies in the state courts. In any event, the procedure followed was that suggested by petitioner's own counsel as the only way to effectuate the intention of the sentencing court that petitioner's state sentence be served concurrently with his federal sentence.

*Statement of Facts*

On February 5, 1970, Benjamin Warren was the subject of five Bronx County Grand Jury indictments arising from his involvement in two unlawful fires. Warren was charged with having set fire to a Bronx apartment building on August 4, 1969, and having instigated three teenage boys to set a fire in that same building on August 6, 1969. The three boys were victims of that fire. In a deathbed statement to his father, one of the boys, Estaban Torres, claimed that Warren had poured gasoline over him and then ignited him with a match. Warren was indicted for murder, felony murder and two counts of arson.

At the time of his arrest on the charges described above, a bench warrant for petitioner was outstanding as a result of his failure to appear for sentencing on September 5, 1969 before the federal district court for the Southern District of New York on a charge of mail fraud in violation of 18 U.S.C. § 1341 to which he had previously pleaded guilty. On March 19, 1970, Warren was brought before the federal court on a writ of habeas prosequendum, sentenced

to five years, and redelivered to the state officials for trial. Petitioner's motion to this Court to vacate his sentence or grant him habeas corpus so he could begin to serve it at once was denied on July 19, 1970. (Mansfield, J.).

Petitioner pleaded innocent and went to trial on the state charges. After several weeks of trial, on May 6, 1971, Warren's plea of guilty to the crime of arson in the first degree was accepted in satisfaction of all five counts of his indictment. Defendant, under oath, admitted setting the fire on August 4, 1969 because he had had a "run in" with the building's owner, Albert Epstein, his co-defendant at trial, who owed him some money. Warren denied entering the building with the three boys on August 6th, but admitted knowing what they planned to do. (Min. of Plea, p. 9).

The trial proceeded against Albert Epstein. On May 20, 1971, the state found a Supplementary Report of the Bureau of Fire Investigation prepared by Fire Marshal Crowley on November 18, 1969. This report contained a second deathbed statement by the Torres boy, this time to his mother, in which he stated that "one of the boys" had poured the gas over his head and lit the match because he wasn't going to help start the fire. He also stated that the landlord, through Warren, was to have paid each of the boys $50.00. As a result of the discovery of this new evidence, the felony murder charge against Epstein was dismissed. Epstein was subsequently convicted of two counts of arson in the first degree and received a sentence of 10 years.

Petitioner was sentenced to an indeterminate term of up to 20 years to run concurrently with his federal term. On his motion, a stay of execution of sentence was granted on the understanding that petitioner would have to begin serving his federal sentence before the state sentence for the two to run concurrently.

Petitioner sought to withdraw his guilty plea on July 13, 1971 as a result of the discovery of the exculpatory report which he claimed the District Attorney had suppressed, and of which he said he had no knowledge until July 9, 1971. He contended that he would not have pleaded guilty had he not been charged with what turned out to be baseless murder indictments. The Court denied defendant's motion to withdraw his plea (Minutes of July 13, 1971).

Defendant Warren's sentence was vacated by the state court on July 23, 1971 in order to effectuate the state court's intention that the state and federal sentences be served concurrently. After he was delivered to the federal authorities, petitioner was resentenced on July 28, 1971. He was then returned to federal custody and transferred to the United States Penitentiary at Lewisburg, Pennsylvania, where he is serving his federal sentence.

*Voluntariness of Guilty Plea*

Petitioner argues that his plea of guilty was entered without knowledge of the existence of exculpatory evidence which rendered his indictment on the murder charge baseless and that his plea to a lesser count in the same indictment was coerced.

Before accepting petitioner's guilty plea, the trial judge conducted an extensive examination of the defendant while under oath. Warren testified to his awareness of the possible maximum sentence, knowledge of available alternatives, and his understanding that the guilty plea would constitute a waiver of defenses, as well as his right to a jury trial. He acknowledged consulting with his counsel, and specifically admitted setting the August 4, 1969 fire in an inhabited apartment building as a result of a disagreement with the building's owner. Petitioner stated that his plea was voluntary and that no promises had been made to him. (Minutes of Plea, pp. 5–16). The trial judge refused to allow withdrawal of the plea on a specific finding that the disclosure of the Fire Marshal's Report would not have made any difference with respect to the plea of guilty to the charge of arson in the

first degree with respect to the August 4th fire—the Report referred only to Warren's complicity in the events of August 6th. (Minutes, July 13, 1971, pp. 8–9).

■■ Petitioner does not now assert his innocence of the charge to which he pleaded guilty. In Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970), the Court stated that:

> "Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment. He thus stands as a witness against himself . . . hence the minimum requirement that his plea be the voluntary expression of his own choice."

Like Brady, the petitioner was advised by competent counsel, was made aware of the nature of the charge against him, and was capable of understanding the proceedings. That petitioner thought he might be subject to a heavier sentence if found guilty after trial is not sufficient to show that his plea was involuntary. Indeed, "a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty." Brady v. United States, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472.

As stated by Mr. Justice White in *Brady*:

> "The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. *A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case. . . ."* (emphasis added) 397 U.S. at 757, 90 S.Ct. at 1473.

In other words, so long as the guilty plea represents a willing and voluntary choice among alternative courses of action, a decision whether to permit the defendant to withdraw his plea is within the discretion of the trial judge. See United States ex rel. Rivera v. Follette, 395 F.2d 450 (2 Cir. 1968).

*Abuse of Trial Court Sentencing Discretion*

Petitioner has failed to establish a clear abuse of trial court discretion in imposing a sentence below the statutory maximum.

■ Petitioner alleges that the trial court improperly considered his responsibility in the deaths of the three boys as a result of the August 6th fire to which he did not plead. The trial judge clearly stated on the record that he was sentencing defendant for arson and not for murder. (Minutes of June 25, 1971, pp. 13–14). The judge did indicate that petitioner's antisocial behavior was evidenced by his disregard for human life in setting a fire in an inhabited building.

■ Petitioner also claims that he was penalized by the judge for having expressed his right to a jury trial for several weeks before pleading guilty. The only evidence for this is the fact that the District Attorney had made a "better" offer before trial. The court declined to adhere to that arrangement, but this is not a situation where the court or the prosecution had reneged on its bargain. Cf. Santabello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L. Ed.2d 427 (1971).

Although petitioner claims that he was not aware of the exculpatory report until July 9, 1971, he heard Justice Greenfield state on June 25, 1971 before he imposed sentence: "Now, I agree that at the end of the trial there was quite a different outlook so far as the alleged murder was concerned, and I am convinced that there was no intentional murder perpetrated by Mr. Warren with respect to these boys, and, of course, being convinced that there was no proof to establish any felony murder, I did dismiss that charge, as against Mr. Epstein. . . ." (Sentencing minutes, June 25, 1971 at 13–14).

This was the time when the petitioner could have come forward and said that he was coerced to plead guilty by the pendency of the murder counts now dismissed. He did not seek withdrawal of the plea until July 13 after he had received a substantial prison sentence.

■ Petitioner's claim that the District Attorney deliberately suppressed material information and overcharged defendant cannot be wholly disregarded. Petitioner does nothing more, however, than attribute bad motives to the prosecution. The Supreme Court in *Brady, supra,* did indicate that the plea might have to be scrutinized differently "where the prosecutor or judge, or both, deliberately employ their charging and sentencing powers to induce a particular defendant to tender a plea of guilty." 397 U.S. at 751 n. 8, 90 S.Ct. at 1470. There is no evidence tendered that the District Attorney *deliberately* suppressed evidence. The trial judge, Justice Greenfield, considered the District Attorney's explanation of his conduct as satisfactory before ruling on the defendant's motion to withdraw his guilty plea. Petitioner has alleged no factual evidence to the contrary. (Minutes of July 13, 1971, pp. 5–7). Moreover, it is a fair inference from the fact that, upon learning of its existence the District Attorney offered the exculpatory Fire Marshal's report into evidence at the trial which was continuing against Epstein, that there was no intention to coerce a guilty plea from Warren. There is no reason why the District Attorney would not have tried to hold the murder charge over Epstein's head to induce a guilty plea on arson if the District Attorney had done so deliberately with respect to Warren.

■ Petitioner argues that his sentence was unduly harsh in light of the lighter sentence received by his co-defendant who declined to plead guilty. However, this is another area not amenable to collateral review in the absence of a clear abuse of discretion. The sentencing court had the benefit of a pre-sentence report as well as other background data on the defendants at the time of sentencing. There is no indication that petitioner was penalized for having exercised his right to trial.

The petition for a writ of habeas corpus is dismissed for failure to exhaust state remedies insofar as it claims that New York has waived its jurisdiction over the petitioner. In all other respects, the petition is denied.

It is so ordered.