George M. LEBOSKY, aka Michael G. Lacey, Petitioner-Appellant,

v.

William B. SAXBE, Attorney General of the United States, et al., Respondents-Appellees.

No. 73–3829.

United States Court of Appeals, Fifth Circuit.

Feb. 13, 1975.

John P. Sugrue, Atlanta, Ga., for petitioner-appellant.

John W. Stokes, Jr., U. S. Atty., Anthony M. Arnold, Asst. U. S. Atty., Atlanta, Ga., for respondents-appellees.

Before GOLDBERG, GODBOLD and MORGAN, Circuit Judges.

GODBOLD, Circuit Judge:

■ Appellant brought this suit in the Northern District of Georgia, asking a writ of mandamus against the Attorney General of the United States. He seeks relief from his inability to serve concurrently his federal sentences and a state sentence that specifically provided for concurrent service, claiming that he should be in federal not state custody, or that the state institution to which he is confined be designated by the Attorney General as a place of confinement for service of his federal sentence, or that he is entitled to credit on his federal sentence for time served under the state sentence. The District Judge dismissed the suit. We reverse.

This appears to be the chronology of pertinent events revealed by the pleadings as fleshed out by the original record. May 1968 appellant was incarcerated at Atlanta Federal Penitentiary under an 18 year sentence. September 1972 he escaped. The following month, October 1972, he was arrested by Louisiana state authorities and charged with armed robbery. A federal detainer was lodged with Louisiana authorities on the escape charge.

December 1972, while still in Louisiana custody, appellant wrote the United States District Court for the Northern District of Georgia, asking that the federal government be required to bring charges against him that would support its detainer, or remove the detainer. The District Judge treated the letter as a petition for a writ of mandamus and issued a show cause order. The government responded, asserting its right to issue a detainer against an escapee without bringing formal charges. Also it stated that appellant was due to be tried soon on the Louisiana state charge, that he was maneuvering to avoid the process of Louisiana courts, and prayed that the matter be held in abeyance for a reasonable time "in order to allow the due process of the State of Louisiana to take effect." The court denied appellant's request, saying:

When Lebosky should be returned to federal authorities to serve the remainder of that sentence is a matter which must be decided by an agreement between federal and Louisiana state authorities and depends partially on the outcome of his presently pending state prosecution.

March 1973 appellant withdrew his plea of not guilty and pleaded guilty in Orleans Parish (New Orleans) to a criminal information on the Louisiana state charge and was sentenced to 15 years "concurrent with any other sentence." No order was issued to commit him to the Louisiana penitentiary. Instead he was held in the local jail and the sheriff's records were marked "hold for federal custody." A few days thereafter appellant's Louisiana counsel wrote an assistant U. S. Attorney in New Orleans as follows:

Enclosed are certified copies of the affidavit and minutes reflecting the sentencing of the above individuals by Judge Bagert.

By copy of this letter, I am advising Mr. LeBreton in Sheriff Heyd's [Criminal Sheriff, Orleans Parish] office that you will expedite matters to have both defendants taken into Federal Custody as soon as practicable.

Thank you for your cooperation.

In April appellant was indicted in the Northern District of Georgia on the federal escape charge. In May he was removed from the local Louisiana jail and sent to that state's penitentiary. The same month he wrote the Northern District of Georgia demanding a speedy trial on the escape charge or dismissal of it and demanding a return to federal custody. The District Judge then entered an order directing a speedy trial. In June federal authorities sought to have appellant enter a plea to the escape charge in the federal court in Louisiana under Rule 20. Appellant refused. Thereupon federal authorities issued a writ of habeas corpus ad prosequendum to Louisiana authorities for arraignment of appellant in the Northern District of Georgia.

The writ indicated appellant would be returned to Louisiana authorities.

Appellant was brought to the Georgia federal court pursuant to the writ, and, on July 9, 1973, pleaded not guilty to the escape charge and was found guilty. He was sentenced to one year, with no reference to concurrency. While in Georgia in federal custody appellant filed this suit. In addition to matters which we have set out he alleged: (1) that the essence of his Louisiana plea bargain was a waiver of confinement by Louisiana and an immediate return to actual federal custody; (2) that Louisiana, by its sentence and the notation on the sheriff's records, waived its right to custody; (3) that Louisiana state officials, at the parish jail and at the state penitentiary, have demanded that the United States take him into custody but the United States has not done so; (4) that Louisiana set his bail on the armed robbery charge at $50,000, and being indigent he could not post bond, but had he been financially able to make bond, federal authorities would have picked him up at once, with a result that his federal sentence would have recommenced, and it and the subsequent Louisiana concurrent sentence would then have been served concurrently. Therefore, his incarceration is prolonged because of his indigency.

Appellant was returned to the Louisiana penitentiary before the Georgia federal judge acted on his suit. August 1973 the judge entered an order of dismissal based on the petition and response. The government acknowledges that a federal detainer was lodged with Louisiana state officials for return of Lebosky to federal custody upon his release from state custody and that it remains in effect.

If the federal and state sentences are served concurrently, or if appellant is given federal credit for state time, he will serve approximately 15 years (18 years first federal sentence, less approximately four years served, plus one year on the escape charge) less good time. Otherwise he will serve approximately twice as long.

The District Court did not address itself to what Lebosky in his pro se petition referred to as "waiver of custody" by Louisiana. After being sifted through appellate briefing and oral argument by appointed counsel this contention might be better recharacterized as follows. Louisiana, recognizing the intent of its sentencing judge, desires to satisfy its sentence by the expiration of concurrent time while appellant serves his federal sentence. The federal government may not, on the one hand, by a detainer have Louisiana hold appellant for federal custody at the termination of his state sentence and, on the other hand, frustrate the intent of the Louisiana sentencing authority by declining to accept the custody made available to it by the detainer.

We are not required to speculate as to the federal government's state of mind. During oral argument government counsel, when asked for an explanation of the federal government's position in the case, stated in substance that it is not interested in doing favors for a prisoner who has fled federal custody. Appellant, however, asks no favor but rather that he not be whipsawed between the federal government's right to take him into custody and its refusal to take him into custody, carried out for the purpose of frustrating the intention of the state sentencing judge and thereby imposing upon him a lengthy non-current state incarceration not intended by the state authorities. In this connection we note the response of the government to the petition for mandamus, that Lebosky "should address the State of Louisiana about being released to federal custody." But the petition alleged that Louisiana officials, at the local jail and at the state penitentiary, have already demanded that federal officials take custody, but that they will not do so.

The government's reliance upon Opela v. United States, 415 F.2d 231 (CA5, 1969), is misplaced. Opela, in state custody awaiting trial, was released to federal custody, tried and sentenced to five years, and returned to the state. In state court he pleaded guilty and was

sentenced to six years, which the sentencing judge intended to run concurrently with all other sentences. The state, however, held Opela in custody until its sentence was satisfied, then released him back to federal custody. Opela then filed a § 2255 petition, asking relief from his federal sentence. We affirmed the District Court's denial of relief. Opela was the victim of a failure by the state to carry out the sentencing judge's intention. Federal authorities were not required to rectify that error. Lebosky, on the other hand—if the allegations of his petition are true—is the victim of a refusal by the federal government, which maintains in effect a detainer against him, to take custody from state officials who are endeavoring to carry out the intent of the state sentencing court.[1]

■ On appeal there has surfaced in sharpened form another possibility which was little more than hinted at in the District Court. Appellant claims that the office of the U. S. Attorney in New Orleans had knowledge of and perhaps participated in an overall arrangement of which the Louisiana plea bargain was a part, and another part of which was an understanding that the federal authorities would promptly take custody of appellant. Both the District Judge and the government refer to the principle that a prisoner may not question an arrangement between sovereigns concerning the order in which sentences are to be executed. Chunn v. Clark, 451 F.2d 1005 (CA5, 1971). That misses the mark in this instance where appellant says that there has been an agreement, expressed or implied, between sovereigns, which the State of Louisiana stands ready to honor and has called upon the United States to honor, but the United States will not honor, or that, at the minimum, there have been representations by the United States upon which the state re-

lied, inducing the imposition of a state sentence whose concurrency provision cannot be implemented because the federal sovereign will not fulfill its representations. The terms of the state sentence, the entry upon the sheriff's records, the retention of appellant in the local jail, the letter from appellant's attorney, and the above quoted notation by the Georgia federal judge in his original order, make appellant's claim at least not frivolous. Further support would come from proof of the allegation, if true, that Louisiana officials have demanded without avail that the United States take appellant into custody. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), stands for a constitutional policy that plea bargains, if made, are to be honored. No plea bargain in a federal case has taken place, but if our national government has induced a state plea bargain in a state case by representations that previously imposed federal time and newly imposed state time will be concurrently served, the policy of *Santobello* would require at least that the federal government not frustrate the state's provision for concurrency.

It may develop that appellant's claim of federal frustration of the state sentence, and the assertion of a federal-state understanding or of federal representations upon which appellant or Louisiana relied, are all not well founded. If any one or more are, this is a case of which the United States cannot be proud. The government asserts that appellant should seek relief at the hands of Louisiana, presumably by his asking that the state sentence be vacated or that he be pardoned or paroled. This argument does not address itself to the realities of the situation. The State of Louisiana has its own interests to protect with respect to a 15-year sentence for a serious crime, which it may be willing that ap-

---

1. There are numerous references in the cases to the fact that the mere existence of a detainer may have an adverse effect upon the named person's present conditions of imprisonment and eligibility for parole. Smith v. Hooey, 393 U.S. 374, at 378–379 n. 8, 89 S.Ct. 575, 21 L.Ed.2d 607, at 611–612 n. 8 (1969); Nelson v. George, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970); Prince v. Alabama, 507 F.2d 693 (CA5, 1975, No. 73–3108).

pellant serve concurrently, but the State may be unwilling that the sentence be vacated or appellant pardoned or paroled. If the federal government has responsibilities in this case, it should shoulder them without attempting either to abdicate them or to shift them to another sovereign.

Appellant's claim that his incarceration is prolonged because of his indigency is based upon United States v. Gaines, 449 F.2d 143 (CA2, 1971). Gaines, free on bail pending sentencing after a federal narcotics conviction, was arrested and charged with a state crime. He was returned temporarily to federal custody for sentencing and was given two years. Then, unable to make state bail ($7500), he remained in state jail until the state dismissed the indictment against him. Federal authorities then took him into custody and refused to give him credit for the state jail time, asserting that under 18 U.S.C. § 3568 ("The sentence of imprisonment of any person . . . shall commence to run from the date on which such person is received at the penitentiary . . . for service of such sentence.") he had never begun to serve his federal sentence. He sued and lost in the District Court and on appeal. The Supreme Court vacated and remanded for "reconsideration in light of position asserted by the Solicitor General."[2] On remand the Second Circuit wrote:

After such reconsideration, we are now of the view that Gaines should be credited with the time spent in custody after the state court had set bail. Gaines was unable to enter into federal custody after bail was set in December 1969 solely because he lacked sufficient funds to post bond in the state court which held him in custody. The Supreme Court's decisions in Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971), and Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970) indicate that a man should not be kept imprisoned solely because of his lack of wealth. If Gaines had had the money to post the state bond in December 1969 and had then entered federal custody, he would now be eligible for his conditional release. Gaines' lack of wealth has resulted in his having to serve a sentence that a richer man would not have had to serve, an impermissible discrimination according to Tate and Williams. Accordingly, Gaines ought to be credited with the time spent in state custody after bail was set.

Remanded to the district court for further proceedings in conformity with this opinion.

449 F.2d at 144. The appellant argued Gaines at length in his present petition but the District Court, without referring to that case, said only that the assertions concerning discrimination on the basis of indigency were without merit. On appeal Gaines is urged by the appellant and ignored by the government.

We remand the case for an evidentiary hearing. A number of issues, factual and legal, appear to us appropriate for consideration. (a) Whether the State has demanded or requested that the United States take appellant into custody pursuant to its detainer. (b) Whether the United States played a part, expressed or implied, in any overall arrangement that included as parts thereof the Louisiana plea bargain and an agreement, or representations by the United States, that appellant would be promptly returned to federal custody. (c) Whether under Gaines there is possible merit to the claim of prejudice because of indigency. (d) Whether the discretion of the Attorney General of the United States to designate or decline to designate a place of confinement[3] is judicially re-

---

2. The Solicitor General's memorandum is reprinted in Wagner, "Sentence Credit for Dead Time," 8 Criminal Law Bulletin, pp. 403–04, June, 1972. It suggests that Gaines be given credit on his federal sentence for the state time caused by inability to make bail.

3. 18 U.S.C. § 4082:

"(a) A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who

viewable under the facts of this case and, if so, whether he has abused his discretion. (e) Whether the existence of the federal detainer adversely affects appellant's conditions of imprisonment on the state charge with respect to good time, eligibility for parole or probation, or in any other respect. (f) Whether the actions of the federal government violate the appellant's constitutional protections against deprivation of liberty without due process, double jeopardy and cruel and unusual punishment. Of course, the District Court may well consider other issues appropriate also.

Reversed and remanded.

shall designate the place of confinement where the sentence shall be served.

(b) The Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility, whether maintained by the Federal Government or otherwise, and whether within or without the judicial district in which the person was convicted, and may at any time transfer a person from one place of confinement to another."