Sanford GIBSON, Petitioner,

v.

Steven PUCKETT, Program Review Offender Classification Chief, Wisconsin Department of Corrections, Respondent.

No. 99–C–1294.

United States District Court,
E.D. Wisconsin.

Feb. 14, 2000.

Sanford Gibson, pro se.

Mary Burke, Ass't Atty. General, for Respondent.

### DECISION AND ORDER

ADELMAN, District Judge.

In this habeas corpus action, petitioner Gibson, a Wisconsin state prisoner, seeks an order that would prohibit the Wisconsin Department of Corrections from transferring him to an out-of-state privately owned correctional facility. A program review committee recommended Gibson for transfer pursuant to Wis. Stat. Ann. § 301.21(2m)(a) (West 1999). Gibson unsuccessfully appealed this decision through prison administrative procedures, contending that he suffers from a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101—12213, and that none of the private facilities to which he might be transferred are ADA compliant. In an order dated December 16, 1999, I observed that the ADA does protect state prisoners, *see Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998), but denied Gibson's petition and summarily dismissed the case as an improper habeas action. Gibson filed a timely motion to reconsider pursuant to Fed. R.Civ.P. 59(e), which I now address.

### I. RECONSIDERATION

A habeas petition should be dismissed if it appears plain that the petitioner is not entitled to relief. *See* Rule 4, Rules Governing § 2254 Cases. In reviewing a petition under this standard, the court must accept as true the petitioner's allegations, *see Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976), and construe the pleading in the light most favorable to the petitioner and resolve all doubts in the petitioner's favor, *see Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

In my December 16, 1999 order, I noted that this was Gibson's second habeas petition challenging a transfer order or recommendation, and observed that to the extent that it challenged the same order or recommendation, it would be barred under the "second or successive" petition doctrine of 28 U.S.C. § 2244(b)(1). Gibson contends that the current transfer recommendation is wholly separate from the earlier one. (Gibson Rule 59(e) Br. at 1–2.) Accepting this allegation as true, as I must at this stage of proceedings, that is enough for now.

I dismissed this case under *Pischke v. Litscher*, 178 F.3d 497 (7th Cir.1999), which held that cases challenging the transfer of Wisconsin prisoners to out-of-state facilities pursuant to Wis. Stat. Ann. § 301.21(2m)(a) must be brought under 42 U.S.C. § 1983 rather than as habeas petitions, because they challenge the conditions (or more precisely, location) of confinement rather than seek a "quantum change" in the level of confinement.

Gibson relies upon *Edwards v. Balisok*, 520 U.S. 641, 648, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997), which held that a prisoner may not use a § 1983 action to challenge alleged due process violations which occurred in a prison disciplinary hearing that led to the prisoner's losing good-time credits, even if the § 1983 action did not seek the restoration of the good-time credits, because the allegations necessarily implied that the loss of the good-time credits was invalid. *Edwards* drew upon the principle of *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), which found that any § 1983 action whose allegations necessarily implied that a conviction or sentence was invalid could not be

brought unless the conviction or sentence had previously been successfully challenged in a manner favorable to the plaintiff. If no such challenge had been brought and the conviction or sentence remained in place, the § 1983 suit would have to be dismissed, and its claims could be brought only as a habeas action.

■ *Edwards* is inapplicable here. The Supreme Court held in *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), *cited in Edwards*, 520 U.S. at 643, 117 S.Ct. 1584, that challenges to the loss of good-time credit must be brought as habeas challenges because they affect the length of confinement. By contrast, "a § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Preiser*, 411 U.S. at 499, 93 S.Ct. 1827. Unlike the § 1983 plaintiffs in *Edwards* and *Preiser* who were told that their only remedy was a habeas action, Gibson is challenging neither the fact nor the length of his custody, nor raising any allegations which necessarily imply that the fact or length of his custody is invalid. He is instead challenging the restrictive nature of the conditions to which he may be exposed if he is transferred. If Gibson prevails, it would not imply the invalidity of a decision that delayed his eventual release. The rationale of *Edwards*, *Heck*, and *Preiser*, requiring such claims to be brought in habeas actions, thus does not apply. There is no bar to Gibson's raising his current claim in a § 1983 action.

■ Gibson next alleges that he has been selected for transfer as a punishment, presumably without benefit of due process (although punishment for what he does not say). (Gibson Rule 59(e) Br. at 4.) Gibson thus implies that the allegedly punitive nature of the decision allows his claim to be heard as a habeas action. But not all orders to which prisoners object—pertinently, including at least some transfer orders—require due process safeguards. *See Meachum v. Fano*, 427 U.S. 215, 224–

25, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). And even if a particular prison action is imposed upon a prisoner *as punishment*, rather than for administrative reasons, the prisoner's objections should be raised in a § 1983 action if they challenge the conditions of confinement. This is seen in the cases that Gibson himself relies upon— both brought as § 1983 actions—to support the proposition that Eighth Amendment claims are inherently "punishment" claims, *Coleman v. Wilson*, 912 F.Supp. 1282 (E.D.Cal.1995), and that medical care claims arise under the Eighth Amendment, *Hare v. City of Corinth*, 74 F.3d 633 (5th Cir.1996) (en banc). Thus, even accepting as true Gibson's allegations that he was recommended for transfer as a punishment without due process, his claim could properly be brought as a § 1983 action (or for that matter as an ADA action).

■ Nonetheless, upon reconsideration I believe that Gibson's allegations, accepted as true, may be enough to allow this case to survive as a habeas action. The relevant standard is that "habeas corpus can be used to get from a more to a less restrictive custody." *McCollum v. Miller*, 695 F.2d 1044, 1046 (7th Cir.1982). To the objection that Gibson (so far as appears from the papers before me) is not yet in the more restrictive custody to which he objects, while habeas is available only to state prisoners "in custody," 28 U.S.C. § 2254(a), I observe that habeas actions may be brought to challenge custody which has not yet begun. *See Maleng v. Cook*, 490 U.S. 488, 493, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989); *Nelson v. George*, 399 U.S. 224, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970). Gibson therefore need not wait until he has actually been transferred to bring a habeas action.

The heart of Gibson's case is his allegation that he suffers from congenital spina bifida, and that none of the private facilities to which he might be transferred can accommodate his disability. (Pet.¶ 5.) Specifically, he alleges, these facilities cannot accommodate his disability in the areas of

toilet facilities, work assignments, or recreational facilities (including a library, which must be made available under *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), if there is not adequate assistance from persons trained in the law). (Pet.¶ 5.) What Gibson challenges is thus being thrust from a prison environment in which his disabilities are accommodated to one in which they are not. I therefore observe that, so far as can be discerned at this early stage, this case will not at all hinge upon the fact that Gibson has been recommended for transfer out of state, or to a private facility—arguments raised and rejected in *Lambert v. Sullivan*, 35 F.Supp.2d 1131 (E.D.Wis. 1999). To the contrary, it appears that the issues will be precisely what they would be if Gibson were being transferred from his current prison to another Department of Corrections-owned and -operated prison located across the street with the same allegedly inadequate facilities; the nub of Gibson's case is his claim that due to his disabilities, being transferred would violate his constitutional rights and his rights under the ADA.

█ Habeas actions may not be used to challenge every change in the restrictiveness of a prison environment. After surveying previous decisions, the Seventh Circuit provided this "generalization," and acknowledged that "[t]he line is not a sharp one":

> If the prisoner is seeking what can fairly be described as a quantum change in the level of custody—whether outright freedom, or freedom subject to the limited reporting and financial constraints of bond or parole or probation, or the run of the prison in contrast to the approximation to solitary confinement that is disciplinary segregation—then habeas corpus is his remedy. But if he is seeking a different program or location or environment, then he is challenging the conditions rather than the fact of his confinement and his remedy is under civil rights law, even if, as will usually be the case, the program or location or environment that he is challenging is more restrictive than the alternative that he seeks.

*Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir.1991). Indeed, it is not clear that there is a line that divides all proper habeas cases from all proper civil rights cases; in *McCollum*, 695 F.2d at 1046, the Seventh Circuit found that disciplinary segregation could be challenged in a habeas action, while in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court addressed precisely such a challenge brought as a § 1983 action. Be that as it may, *Pischke* adopts *Graham*'s generalization about when a claim may properly be brought as a habeas action, specifically observing that a habeas action *can* be used to challenge a transfer if "the custody in which the transferred prisoner will find himself when transferred is so much more restrictive than his former custody that the transfer can fairly be said to have brought about what in *Graham* we called 'a quantum change in the level of custody.'" *Pischke*, 178 F.3d at 499 (quoting *Graham*, 922 F.2d at 381).

The Seventh Circuit's ultimate decision in *Graham* itself, that a prisoner denied access to a work release program could not sue in a habeas action, was based on a finding that the essence of the relief the petitioner sought was to be allowed to work in a factory outside the prison that might in fact be identical to a prison factory inside the prison. In other words, the essential difference was one of location and not the quantum of confinement or restriction. *See Graham*, 922 F.2d at 381. By contrast, Gibson alleges that if transferred he would be burdened with unnecessarily protracted, degrading, and perhaps painful processes even to use toilet facilities. Thus, the essence of the difference that he alleges is precisely a difference in the degree of restriction imposed upon him by prison officials, rather than a difference in the location of where he serves his sentence. The quantum of increased restriction is evocative of that suffered by prisoners in disciplinary segregation, who (as

observed above) may proceed in habeas under *McCollum*, 695 F.2d at 1046. For these reasons, I will grant Gibson's motion to reconsider, vacate the earlier judgment, and reopen Gibson's habeas case.

## II. EXHAUSTION

■ The next question, as in any habeas case, is whether the petitioner has exhausted the remedies available to him in the courts of the state. *See* 28 U.S.C. § 2254(b)(1)(A). In this case, Gibson indicates that he challenged being recommended for transfer through an administrative appeal (Pet.¶¶ 5–6), but makes no statement regarding whether he attempted to challenge the administrative appeal decision in the state courts. A claim is considered to have been exhausted in the state courts only if the petitioner has provided the state courts with a full and fair opportunity to review his claims. *See O'Sullivan v. Boerckel*, 526 U.S. 838, ——, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). A specific claim is not considered exhausted if the petitioner "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). This generally requires appealing state court decisions all the way to the state supreme court. *See O'Sullivan*, 119 S.Ct. at 1733. Because Gibson's administrative appeal was decided August 26, 1999, and he filed this habeas action less than two and a half months later, on November 5, 1999, it is clear that even if Gibson immediately filed a state court suit, he surely did not have time to appeal a decision all the way to the Wisconsin Supreme Court.

But the requirement of exhaustion is waived where the petitioner can show that there is no available state corrective process or that circumstances exist that render such process ineffective to protect the petitioner's rights. *See* 28 U.S.C. § 2254(B)(1)(b). Five minutes' research reveals two different methods that other prisoners have used to obtain a hearing in the state courts on complaints seeking relief from prison disciplinary measures: in *Lomax v. Fiedler*, 204 Wis.2d 196, 204, 554 N.W.2d 841 (Ct.App.1996), a plaintiff sued prison officials in state court under the federal civil rights statute, 42 U.S.C. § 1983; and in *State ex rel. Whiting v. Kolb*, 158 Wis.2d 226, 233, 461 N.W.2d 816 (Ct.App.1990), the plaintiff petitioned in state court for a writ of certiorari which would overturn a prison disciplinary decision. There may well be additional methods open to state prisoners seeking state court relief; this list does not purport to be exhaustive. I will grant Gibson forty-five days to submit a brief on why, despite the apparent availability of at least two methods of seeking relief in the state courts, this court should find that there is no available state court corrective process, or that pursuing a remedy in the state courts would be futile.[1]

**THEREFORE, IT IS HEREBY ORDERED** that petitioner's motion to reconsider (R. 8) is hereby **GRANTED**, that the judgment entered against petitioner December 16, 1999 (R. 7) is **VACATED**, and that this case is **REOPENED**.

**IT IS FURTHER ORDERED** that within 45 days of the date of this order, petitioner shall submit a brief on the unavailability of state corrective proceedings and/or the futility of pursuing relief for his claim in state court.

A copy of this order will be sent by my clerk to the Attorney General for the State of Wisconsin, c/o Mary Burke, Assistant Attorney General, P.O. Box 7857, Madison, WI 53707.

---

**1.** I observe that a plaintiff who brings a § 1983 action in federal court is not required to exhaust state court remedies first (although prisoners seeking relief under § 1983 must first exhaust state *administrative* appeals, pursuant to 42 U.S.C. § 1997e(a)). The requirement to exhaust state *court* remedies arises only in federal habeas cases.