164 F.3d 440
 99 Cal. Daily Op. Serv. 15, 98 Daily Journal
D.A.R. 43
Miguel TAYLOR, Petitioner-Appellant,
v.
Janet RENO, Attorney General; Kathleen Hawk, Director of
Bureau of Prisons; Eduardo Gonzales, Director
U.S. Marshal Service, Respondents-Appellees.
United States of America, Plaintiff-Appellee,
v.
Miguel Taylor, Defendant-Appellant.
 Nos. 97-36198, 98-35013.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 6, 1998.
Decided Dec. 31, 1998.
 
 Steven T. Wax, Federal Public Defender's Office, Portland, Oregon, for the petitioner-appellant.
 Michael J. Brown, Assistant United States Attorney, Portland, Oregon, for the respondent-appellee.
 Appeals from the United States District Court for the District of Oregon; Malcolm F. Marsh, District Judge, Presiding. D.C. Nos. CV-97-00592-MFM, CV-97-00593-MFM.
 Before: THOMPSON and TROTT, Circuit Judges, and RHOADES, District Judge.*
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 The appellant Miguel Taylor ("Taylor") was sentenced to three concurrent 70-month terms of imprisonment by the United States District Court for his drug convictions in this case. He was also sentenced by the Oregon State Court to 115 months for a manslaughter conviction. In this appeal from the denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2241, and from the denial of his motion for a reduction of his sentence pursuant to 28 U.S.C. § 2255, Taylor challenges the district court's refusal to transfer his custody from the State of Oregon to the Federal Bureau of Prisons so that his federal sentence would commence. He also challenges the district court's refusal to give him credit against his federal sentence for the time he has served and will serve in state custody.
 
 
 2
 Taylor contends that his federal sentence should have commenced prior to his state sentence because the federal government had primary jurisdiction over him when it imposed his federal sentence. He also argues that the district court's judgment and commitment order mandated that the United States Marshal ("Marshal") deliver him into federal custody, and the Marshal failed to do so. Taylor further argues that he received constitutionally ineffective assistance of counsel when his attorney informed him that his federal sentence would begin when the district court's commitment order was entered. Finally, he contends that statements about his custodial status made by the district judge during sentencing about his custodial status lulled him into relying on erroneous advice of his counsel, thereby denying him due process.
 
 
 3
 We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.
 
 FACTS
 
 4
 In June 1992, Taylor was charged in federal court with conspiracy to distribute and distribution of crack cocaine. Approximately two weeks after his arrest, Taylor was released on his own recognizance. On October 27, 1992, Taylor pleaded guilty to three federal counts of distributing crack cocaine. Taylor remained released on his own recognizance pending sentencing.
 
 
 5
 While he was on release awaiting sentencing, state officials arrested him on December 14, 1992, charged him with murder, and jailed him.
 
 
 6
 Back in federal court, the district court set March 29, 1993 as the date for a hearing on Taylor's objections to his presentence report and on his motion to continue his federal sentencing hearing. On the March 29th date, pursuant to a writ of habeas corpus ad prosequendum, state officials produced Taylor at the United States District Court. During the hearing, the district judge expressed concern about the delay in sentencing:
 
 
 7
 [Taylor] is sitting in jail on state charges not giving him credit towards a federal charge.... [H]e is serving a term as far as I am concerned he should get credit for. I don't have the power to do this as long as he is in state custody.
 
 
 8
 The district judge continued the sentencing to May 10, 1993, at which time Taylor appeared for federal sentencing without the issuance of a new writ of habeas corpus ad prosequendum. The original writ required Taylor's presence for federal court sentencing on March 29, 1993, and for "such further proceedings as may be directed by the Court."
 
 
 9
 At the May 10, 1993 sentencing hearing, Taylor was sentenced to three concurrent terms of 70 months. His defense counsel raised the issue of whether Taylor would be granted federal credit for time that he served in state custody. Responding to that concern, the district judge stated:
 
 
 10
 I will recommend [that Taylor be sent to] the Federal Corrections Institute at Sheridan. [Taylor] will be sentenced to the custody of the Bureau of Prisons. I also considered that with the imposition of this sentence you are now in federal custody. I also feel that you are entitled to the credit for time that you were in custody from the time of your release until the time of the State arrest. However, you must be aware of the fact that the original determination of all credit for time served is made by the Bureau of Prisons. If it abuses its discretion or violates the law, that can be reviewed by a District Court. So my statements of what I feel you are entitled may meet with some resistance but those are the recommendations that I am making.
 
 
 11
 The district judge's written order specifically stated, "[w]ith the imposition of this sentence, the defendant is now in federal custody. The court recommends that the defendant be given credit for time served from the time of arrest on the federal charges until his release on federal charges." The order also contained language that Taylor was "hereby committed to the custody of the Federal Bureau of Prisons." At the conclusion of the May 10, 1993 sentencing hearing, the Marshal returned Taylor to the county detention center, where he was held as a state prisoner.
 
 
 12
 Taylor was subsequently acquitted on the state murder charge, but he was convicted of manslaughter. His manslaughter conviction was reversed on appeal, he was retried for manslaughter and once again convicted. The state court sentenced him to 115 months in state prison, gave him credit for the time he had served in state custody, and ordered that his state sentence run concurrently with his previously imposed 70-month federal sentence. Ever since Taylor's first conviction on the state manslaughter charge he has been serving his state sentence in the custody of the Oregon Department of Corrections.
 
 
 13
 Following the imposition of Taylor's state sentence, the Bureau of Prisons refused to take custody of him and opted not to begin running his federal sentence until he completed his state sentence. The Bureau of Prisons advised Taylor, however, that it would be willing to designate the Oregon prison as the site for service of his federal sentence, thereby producing concurrent federal and state sentences, if the federal district court recommended it. The district court refused to make that recommendation. In refusing to do so, the district court referred to the fact that the imposition of concurrent state and federal sentences would render the 70-month federal drug trafficking sentences a nullity and that permitting Taylor to "trade" his concurrent federal drug sentences for the 115-month state manslaughter sentence would be unconscionable. Thus, Taylor continues to serve his state sentence in state custody; his federal sentence has not yet commenced.
 
 
 14
 Taylor filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and a motion for reduction of his federal sentence pursuant to 28 U.S.C. § 2255. The district court denied relief, and this appeal followed.
 
 
 15
 We must first determine whether the state or federal government had primary jurisdiction[1] over Taylor at the time his federal sentence was imposed on May 10, 1993. Taylor argues that the federal government had primary jurisdiction over him at that time because his federal custody continued while he was on release awaiting federal sentencing. In the alternative, Taylor contends that if the federal government relinquished primary jurisdiction over him when he was released awaiting his federal sentencing, the federal government regained primary jurisdiction when the state delivered him to federal court for the May 10, 1993 sentencing hearing, without a new writ of habeas corpus ad prosequendum. Because the federal government had primary jurisdiction over him at that time, Taylor argues, his federal sentence commenced before imposition of his state sentence.
 
 
 16
 While the federal government undoubtedly had primary jurisdiction over Taylor before it released him on his own recognizance, the question is whether this release relinquished federal primary jurisdiction. We conclude that it did. As a result, the state obtained primary jurisdiction over Taylor when it arrested him on the state murder charge. Further, because Taylor appeared pursuant to a valid writ of habeas corpus ad prosequendum, he was still in state custody when he was delivered to the federal court for the March 29, 1993 hearing and for the May 10, 1993 sentencing. Because he was still in state custody at the time the district court imposed Taylor's federal sentence, the district court did not have authority to order Taylor into federal custody to commence his federal sentence.
 
 
 17
 We reach this conclusion mindful of a split among the circuits on the issue of whether releasing a defendant on bail relinquishes primary jurisdiction. The Sixth Circuit, in United States v. Croft, 450 F.2d 1094 (6th Cir.1971), held that when a defendant is charged with a federal offense and released on bail, the federal government does not lose its primary jurisdiction. To the contrary, the Second Circuit in Roche v. Sizer, 675 F.2d 507 (2d Cir.1982), held that primary jurisdiction passes to the state when a defendant posts bond on federal charges and is subsequently arrested by the state. The facts of both cases are almost identical to those before us.
 
 
 18
 Ninth Circuit precedent leads us to the Second Circuit's position that the federal government relinquished its custody and primary jurisdiction when it released Taylor on his own recognizance. In Strand v. Schmittroth, 251 F.2d 590 (9th Cir.1957), we held that the federal government gave up primary jurisdiction when it released a sentenced prisoner on probation and the prisoner was later arrested on state charges. Strand relied largely on the state's physical possession of the defendant. Id. at 606. As in Strand, the state in this case, not the federal government, maintained physical possession of Taylor. "The sovereign who lacks possession of the body 'permits' another to proceed against the accused...." Id.
 
 
 19
 Although not directly addressing the question of primary jurisdiction, Clark v. Floyd, 80 F.3d 371 (9th Cir.1996), decided more recently, also supports the proposition that the federal government relinquished primary jurisdiction over Taylor when it released him on his own recognizance. The defendant in Clark was convicted in federal court (as opposed to only being charged) and then released on bail pending appeal. Id. at 372. While on release, the state arrested and convicted him. Id. The federal court then revoked the probation portion of Clark's sentence. Id. On appeal, we determined that Clark was properly returned to state custody after the revocation of his federal probation. Id. at 373. The necessary implication of this holding is that the state's jurisdiction became primary when it arrested Clark while he was on bail pending appeal of his federal conviction.
 
 
 20
 We hold that the federal government lost its primary jurisdiction over Taylor when it released him on his own recognizance. The state then gained primary jurisdiction over him when it arrested him and took him into custody on the state murder charge.
 
 
 21
 The question we next consider is whether the state ceded its primary jurisdiction to the federal government when it permitted the Marshal to take Taylor to federal court for the sentencing hearing on May 10, 1993 without a new writ of ad prosequendum. Taylor argues that the writ of habeas corpus ad prosequendum-which directed the Marshal to deliver him to the federal court on March 29, 1993, "for the purpose of sentencing and for such further proceedings as may be directed by the Court"-did not cover his subsequent return to federal court on May 10, 1993.
 
 
 22
 We are unpersuaded by this argument. In Thomas v. Brewer, 923 F.2d 1361 (9th Cir.1991), we determined that a writ of habeas corpus ad prosequendum, which ordered a defendant who was held in state custody to be produced for sentencing in federal court on a specific date "and also at such other times as may be ordered by the said court," was sufficient to support the delivery of the defendant to federal court on a later date without interrupting the state's priority of jurisdiction. Id. at 1365. The Thomas writ is not meaningfully different from the writ issued here. In both cases, the writs' breadth allowed for producing the defendant for future, unspecified proceedings. Thus, Taylor was properly delivered to the district court for sentencing on May 10, 1993 under the earlier writ ad prosequendum and the state retained its primary jurisdiction. Because the state retained primary jurisdiction, the district court did not have the authority to place Taylor into federal custody for the purpose of commencing his federal sentence.
 
 
 23
 Taylor next argues the district judge's written and oral statements, that, with the imposition of the federal sentence Taylor was "now in federal custody," were pronouncements commencing Taylor's federal sentence. We disagree. A federal sentence commences "on the date the defendant is received in custody awaiting transportation to, or arrives ... at, the official detention facility at which the sentence is to be served," 18 U.S.C. § 3585, not when sentence is imposed. Any statement by the court prescribing when a sentence will begin to run is mere surplusage. See Scott v. United States, 434 F.2d 11, 21 (5th Cir.1970). The district court did not have the power to commence Taylor's federal sentence, regardless of whether the court intended to do so and regardless of what the court said.
 
 
 24
 Taylor argues that the Marshal disobeyed the district court's commitment order, which order he construes as directing his immediate delivery to the Bureau of Prisons for commencement of his federal sentence. We need not address this argument, because, as we have said, the district court lacked authority to order the commencement of Taylor's sentence.
 
 
 25
 Taylor also asserts a due process argument. He contends that the district judge's comments at the March 29 and May 10 hearings violated his due process rights because (1) they lulled him into relying on the erroneous advice of counsel and (2) they were fundamentally unfair. Because we determine that the proceedings were not rendered so fundamentally unfair as to violate constitutional due process, we reject both arguments.
 
 
 26
 In his affidavit, Taylor's attorney stated that he believed Taylor would get credit on his federal sentence from the day of federal sentencing forward based partially on the court's expressed concern that Taylor was at the time receiving no credit against his federal sentence. Taylor's lawyer relied on the following statement by the district judge at the March 29 hearing:
 
 
 27
 I have got a young man here [Taylor] that we are delaying with--he is sitting in jail on state charges not giving him credit towards a federal charge. I have got a man who has come forward quickly ... and now we are sitting around delaying this sentencing, and he is serving a term as far as I am concerned he should get credit for. I don't have the power to do this as long as he is in state custody.
 
 
 28
 Taylor's spin on this statement is not justified. The district judge clearly states that he cannot give Taylor federal credit while Taylor is in state custody. Furthermore, the district judge's concern does not equal a promise to start running Taylor's federal sentence from the date of his federal sentencing. The statement is more properly construed, as the district court later noted, as a concern that Taylor receive credit for time served from the date of his federal sentencing until the resolution of his state case rather than a declaration of when Taylor's federal sentence commences. And in any event, statements by a district court regarding credit for time served are only recommendations. See United States v. Wilson, 503 U.S. 329, 333, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992).
 
 
 29
 Taylor also points to the following comment of the district judge at the May 10 hearing: "I also considered that with the imposition of this sentence you are in federal custody." But here, the district judge specifies his concern, stating the following:
 
 
 30
 I also feel that you are entitled to the credit for the time that you were in custody from the time of your release until the State arrest. However, you must be made aware of the fact that the original determination of all credit for time served is made by the Bureau of Prisons. ... [M]y statements of what you are entitled to may meet with some resistance but those are the recommendations that I am making. (Emphasis added.)
 
 
 31
 Once again, the second part of the court's statement makes clear that (1) the district judge could not guarantee Taylor federal credit and (2) it is not a declaration of the commencement of Taylor's federal sentence.
 
 
 32
 In contending that the district court hearings were so fundamentally unfair as to violate federal due process under the Constitution, Taylor relies on United States v. Neely, 38 F.3d 458 (9th Cir.1994). Neely held that a district court cannot accept a defendant's guilty plea without informing him that his federal sentence could be served consecutively to a pending state sentence. Id. Neely is inapposite because the record clearly indicates that Taylor was aware of the possibility of consecutive state and federal sentences.
 
 
 33
 Taylor also relies on United States v. Buchanan, 59 F.3d 914 (9th Cir.1995), to argue that the district judge's oral pronouncements must control. Buchanan held that where there is a direct conflict between a judge's unambiguous oral pronouncement of sentence and the written judgment, the oral pronouncement must control, even if erroneous. Id. Here, there is no conflict between the district judge's oral and written pronouncements.
 
 
 34
 Taylor's final contention is that his attorney, at sentencing, provided constitutionally ineffective assistance of counsel.
 
 
 35
 To prevail on a claim of ineffective assistance of sentencing counsel, Taylor must prove that his attorney's performance fell below an objective standard of reasonableness and that his attorney's error rendered the sentencing proceeding "unreliable" or "fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." Lockhart, 506 U.S. at 372, 113 S.Ct. 838. A defendant is not entitled to relief unless "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052.
 
 
 36
 Taylor argues that his counsel's performance was constitutionally deficient because his counsel (1) informed Taylor that his federal sentence would commence on May 10, 1993, (2) neglected to ensure that Taylor was in federal custody at the time his federal sentence was imposed, (3) failed to seek a continuance of Taylor's federal sentence pending his sentencing in state court, and (4) failed to move to vacate Taylor's plea. We reject all of these arguments.
 
 
 37
 To the extent that Taylor's counsel misadvised him about the commencement of his federal sentence, Taylor failed to show that this advice rendered the federal sentencing proceeding "unreliable" or "fundamentally unfair." Taylor did in fact receive credit for time served before imposition of his federal and state sentences. He didn't receive the credit against his federal sentence, but he received credit against his state sentence.
 
 
 38
 The failure of Taylor's attorney to seek Taylor's transfer from state to federal custody prior to Taylor's federal sentencing did not fall below an objective standard of reasonableness. A reasonable attorney could conclude that the state sentencing court that imposed the subsequent state sentence would properly deal with any issues arising from Taylor's federal and state sentences.
 
 
 39
 Counsel's failure to move for a continuance of Taylor's federal sentencing pending his state murder trial also did not likely fall below an objective standard of reasonableness. Federal Rule of Criminal Procedure 32(a)(1) requires that a federal sentence "be imposed without unnecessary delay." Also, in the normal course of events, a federal district court lacks discretion to order a federal sentence to run concurrently with a state court sentence imposed after entry of the defendant's federal guilty plea. See Neely, 38 F.3d at 461. Thus, counsel's failure to move for a continuance of the May 10 sentencing hearing was not unreasonable. Moreover, Taylor has not established prejudice. No guarantee existed that the district court would have ordered the federal sentence to run concurrently with the state sentence. Indeed, when presented with this option, the district court rejected it.
 
 
 40
 Finally, counsel's failure to move to vacate Taylor's guilty plea was not objectively unreasonable. At the time Taylor entered that plea the only charges pending against him were federal charges.
 
 CONCLUSION
 
 41
 Because Oregon had primary jurisdiction over Taylor at the time of his federal sentencing, the district judge did not have the authority to commence the running of Taylor's federal sentence. Any comments by the district judge that could be interpreted as relating to the commencement of Taylor's sentence were mere surplusage and, thus, did not result in the denial of Taylor's due process rights. The Marshal properly returned Taylor to state custody, and Taylor did not receive constitutionally deficient assistance of counsel, nor were the district court proceedings fundamentally unfair.
 
 
 42
 AFFIRMED.
 
 
 
 *
 Honorable John S. Rhoades, Sr., United States District Court Judge for the Southern District of California, sitting by designation
 
 
 [1]
 The term "primary jurisdiction" in this context refers to the determination of priority of custody and service of sentence between state and federal sovereigns. Cf. United States v. Warren, 610 F.2d 680, 684 (9th Cir.1980). A lack of "primary jurisdiction" does not mean that a sovereign does not have jurisdiction over a defendant. It simply means that the sovereign lacks priority of jurisdiction for purposes of trial, sentencing and incarceration. Id. at 684-85