**Miguel Lawayne TAYLOR,**
Petitioner–Appellant,

v.

**Kathleen Hawk SAWYER,** Director, Bureau of Prisons; David Cook, Director, Oregon Department of Corrections; Frank Thompson, Superintendent, Oregon State Penitentiary, Respondents–Appellees.

No. 01–35103.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 9, 2001.

Filed March 28, 2002.

Before HUG, JR., T.G. NELSON, and GOULD, Circuit Judges.

## OPINION

GOULD, Circuit Judge.

 Miguel Lawayne Taylor appeals the district court's denial of his 28 U.S.C. § 2241 habeas corpus petition. Taylor's petition sought an order directing the Federal Bureau of Prisons to designate an Oregon Department of Corrections facility for service of his federal sentence *nunc pro tunc*[1] to May 10, 1993, thereby giving effect to an allegedly concurrent state sentence. Taylor contends that the Bureau of Prisons' denial of the request for designation was based on an invalid policy statement that he argues is contrary to the governing statutory law. He contends alternatively that the denial violates principles of dual sovereignty, comity, federalism, and full faith and credit.

The district court denied Taylor's petition for writ of habeas corpus. Taylor appeals. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 10, 1992, Miguel Taylor was indicted in the United States District Court for the District of Oregon for conspiring to distribute, and for distributing, crack cocaine. He was arraigned on August 3, 1992 and later released into the community. While on release, Taylor entered a guilty plea in the federal district

Steven T. Wax (argued), Assistant Federal Public Defender, Portland, OR, for the petitioner-appellant.

Michael Brown, Assistant United States Attorney, Portland, OR, for the respondent-appellee.

---

1. *Nunc pro tunc* is a Latin phrase meaning "now for then." Black's Law Dictionary (7th ed.1999). "When an order is signed 'nunc pro tunc' as of a specified date, it means that a thing is now done which should have been done on the specified date." *Id.* (quoting 35A C.J.S. Federal Civil Procedure § 370, at 556 (1960)).

court, admitting that he had distributed crack cocaine. The court continued Taylor's release on previously established conditions and ordered that he appear for sentencing on January 4, 1993. A few months later after the plea in federal court, on December 14, 1992, Taylor was arrested and held in custody by the State of Oregon on murder charges.

■ At Taylor's request, the federal sentencing was rescheduled to May 10, 1993, when, although in state custody, he appeared before the federal court on a *writ ad prosequendum*[2] and was sentenced to serve a 70 month term of imprisonment. The judgment and commitment order included the notation that "[w]ith the imposition of this sentence, the defendant is now in federal custody." [3]

Notwithstanding, Taylor remained in state custody and was thereafter tried in state court, convicted of manslaughter, and sentenced to imprisonment for a term of 115 months. The state court judgment said that the state sentence would run "concurrently with federal time." Taylor was then sent to the Oregon State Penitentiary to commence service of his state sentence. After his arrival at the penitentiary, the Bureau of Prisons ("BOP") told Taylor that his federal sentence would not begin to run until he had been released by the state and taken into federal custody.

On March 22, 1995, the Oregon Court of Appeals reversed Taylor's manslaughter conviction. Taylor remained in custody of the State of Oregon, however, until the case was tried a second time. The retrial resulted in Taylor's conviction once again of manslaughter, and he was again sentenced to serve a 115 month term of imprisonment. The state judgment imposed after Taylor's retrial did not refer to the outstanding federal sentence, and did not include the "concurrently with federal time" phrase that had been part of the earlier state judgment voided by the state appellate court decision of March 22.[4]

Thereafter, while imprisoned by the state, Taylor filed petitions in the United States District Court for the District of Oregon, under 28 U.S.C. §§ 2241 and 2255. Taylor sought a transfer to federal custody and an order giving him credit against his federal sentence beginning on May 10, 1993. Alternatively, he wanted to vacate his federal conviction and/ or sentence. The district court denied Taylor's requests, clarifying:

> [P]etitioner construes my statement that "[w]ith the imposition of this sentence, the defendant is now in federal custody" to be a pronouncement that petitioner's federal sentence commenced on May 10, 1993, despite his presence in state custody. However, in light of 18 U.S.C. § 3585 (providing that a federal sentence "commences on the date the defendant is received in custody awaiting transportation to, or arrives ... at, the official detention facility at which the

---

2. A *writ ad prosequendum* allows a prisoner who is in one jurisdiction to be removed to another jurisdiction for prosecution of a crime within the second jurisdiction. *Morgan v. United States*, 380 F.2d 686, 693 (9th Cir. 1967).

3. As discussed below, this Court held in *Taylor v. Reno*, 164 F.3d 440 (9th Cir.1998), that the district court's statement when sentencing Taylor as to his status "in federal custody" had no legal consequence because the district

court lacked jurisdiction to commence the federal sentence because Taylor was then in the primary custody of the State of Oregon.

4. Although the sentence no longer specifically included the phrase "concurrently with federal time," the sentence would be concurrent under Oregon law because under Oregon Revised Statute 137 .123(1), "[a] sentence shall be deemed to be a concurrent term unless the judgment specifically provides for consecutive sentences."

sentence is to be served"), a statement that petitioner's federal sentence commenced upon its entry is mere surplusage.

Taylor appealed this ruling. In a published opinion, *Taylor v. Reno*, 164 F.3d 440 (9th Cir.1998), we affirmed the judgment of the federal district court, holding that the district court's statement when sentencing Taylor on May 10, 1993, that upon the imposition of the sentence Taylor would be "in federal custody," was of no legal consequence. We held that the district court was without power to commence the federal sentence, given that Taylor was then in the primary custody of the State of Oregon. *Id.* at 445–46.

Following our affirmance, Taylor again sought to convert his federal sentence into a concurrent term of imprisonment by asking the district court to recommend that the BOP commence his sentence *nunc pro tunc* to May 10, 1993. The district court declined, stating that concurrent service of the sentences "would depreciate the seriousness of both the state and federal offenses."

Next, in an effort to secure credit against his federal sentence, Taylor asked the Oregon Department of Corrections ("DOC") to request that the BOP designate a DOC facility for service of the federal sentence. The DOC requested, in letters to the BOP forwarded on October 15, 1999 and again on February 18, 2000, that it be designated as the "primary custodian for [Taylor's] federal term." The Regional Director of the BOP denied this request stating:

> [T]he records provided to us by the United States District Court of Oregon did not indicate the Federal offense would run concurrently with the State offense. Therefore, the Federal offense runs consecutively. [Taylor] will not be taken into the BOP until he completes his State sentence or until other arrangements are made. Finally, Mr. Taylor will not receive credit for his Federal sentence at this time. Time served cannot be credited until he is in Federal custody.

By September 15, 2000, Taylor had completed his state sentence, was released to federal authorities, and commenced serving his federal sentence at the Federal Correctional Institution, Sheridan, Oregon.

Taylor then filed this habeas corpus petition pursuant to 28 U.S.C. § 2241. He alleged that the BOP violated his constitutional rights when it refused to give effect to the concurrent service of Taylor's state and federal sentences. The district court rejected Taylor's claims, holding that the BOP's refusal to treat the state and federal sentences as concurrent did not violate the concepts of comity and full faith and credit. And the district court held that the BOP's decision was neither arbitrary nor capricious, in light of the repeated refusals of both the state and federal courts to take any of the actions requested by Taylor that would have effectively produced concurrent sentences. The court concluded that it lacked jurisdiction to compel the requested *nunc pro tunc* designation.

Taylor appeals. Pursuant to 28 U.S.C. §§ 1291 and 2253, we have jurisdiction over Taylor's appeal.

## DISCUSSION

### I.

We review *de novo* the denial of a petition filed under 28 U.S.C. § 2241. *Bowen v. Hood*, 202 F.3d 1211, 1218 (9th Cir. 2000).

Taylor argues that the actions of the BOP in refusing to commence the running of Taylor's federal sentence or to accept

the State of Oregon's request for a *nunc pro tunc* designation are based on a misunderstanding of the federal court order that sentenced him and of the authority that the federal sentencing judge possessed when he imposed the sentence.

The statute that governs the manner in which multiple sentences of imprisonment may be imposed is 18 U.S.C. § 3584, which states in subsection (a):

Imposition of concurrent or consecutive terms: If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. *Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently.*

18 U.S.C. § 3584(a) (emphasis added).

■ Based on the plain language of the statute, we have held on several occasions that the district courts cannot order a sentence to run either concurrently or consecutively to a non-existent term. *United States v. Neely,* 38 F.3d 458, 461 (9th Cir.1994); *United States v. Clayton,* 927 F.2d 491, 492 (9th Cir.1991). At the time of the federal sentencing, the state had not yet imposed a sentence, and thus the district court did not have the discretion to characterize the sentence it imposed as either consecutive or concurrent. 18 U.S.C. § 3584.

■ Taylor argues that BOP Policy Statement § 5160.04, which provides that the BOP may make a *nunc pro tunc* designation of a state facility for service of a federal sentence, is invalid because it is contrary to the plain meaning of 18 U.S.C. § 3584. Taylor argues that "[c]ontrary to the plain language of § 3584(a) and absence of authority to act, the BOP requires a federal court to order concurrency in express terms even when a federal sentence is imposed at a time when no state sentence exists before it will acknowledge that a state sentence is to be served concurrently." [5] Taylor is mistaken.

■ [3] BOP Policy Statement § 5160.04 grants the authority to designate a state institution for "concurrent service of a Federal sentence" to the Bureau's Regional Directors "when consistent with the intent of the sentencing Federal court." Under the BOP policy statement, there are several paths that can lead to the designation of a state facility for concurrent service of a federal sentence. The designation can be made under circumstances including: (1) if a defendant serving a state sentence is sentenced by a federal judge who orders the federal sentence to run concurrently with a preexisting state sentence, BOP Policy Statement § 5160.04(9)(a) & (b); (2) if the federal court orders concurrent service of the fed-

---

**5.** Taylor also argues that Policy Statement § 5160.04(9)(c) is inconsistent with 18 U.S.C. § 3582 and Fed.R.Crim.P. 35(c) because it provides for entry of a court order affecting a sentence after its imposition. Under 18 U.S.C. § 3582 and Fed.R.Crim.P. 35(c), the law limits the authority of the federal courts to modify a sentence once it has been imposed. However, the policy statement does not conflict with these limitations and does not expand a court's power to enter orders affecting a sentence after its imposition. It merely defines what the BOP can do if such an order is entered.

eral sentence at some time after the initial imposition, BOP Policy Statement § 5160.04(9)(c) [6]; (3) if an inmate requests a *nunc pro tunc* designation and the district court does not object, BOP Policy Statement § 5160.04(9)(d); and (4) if a "state jurisdiction" makes a "request" that state and federal sentences be treated as concurrent terms of imprisonment, BOP Policy Statement § 5160.04(9)(e).

But in any case the designation of an appropriate state institution for service of a "concurrent" federal sentence must be "in compliance with applicable statutes, court order or recommendations, and the goals of the criminal justice system," and "will only be made when it is consistent with the intent of the sentencing Federal court." BOP Policy Statement § 5160.04(9). The policy statement's focus on the federal sentencing court's intent is consistent with the statute's provision that sentences "imposed at different times [are to] run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a). Equally important, such a designation by the BOP is plainly and unmistakably within the BOP's discretion and we cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy. *See McCarthy v. Doe,* 146 F.3d 118, 123 (2d Cir.1998) (BOP is given broad discretion to grant or deny a request for *nunc pro tunc* relief

after the request is given "full and fair consideration"); *Barden v. Keohane,* 921 F.2d 476, 478 (3d Cir.1990) (decision to grant *nunc pro tunc* relief is within the discretion of the BOP). We hold that the BOP's choice here to exercise its discretion, in part by relying upon the intent of the sentencing court, is not inconsistent with 18 U.S.C. § 3584.

## II.

█ Furthermore, the refusal of the BOP to exercise its discretion to treat Taylor's sentences, in effect, as concurrent by designating a state facility as the site for the service of the federal sentence was neither arbitrary nor capricious. The federal sentencing court had made it clear, at least since December, 1993, that it would not view the service of concurrent sentences as "consistent with the goals of the criminal justice system," noting that the conversion of Taylor's sentences into concurrent terms would only serve to "depreciate the seriousness of both the state and federal offenses." Given the express intent of the federal sentencing judge, the BOP was obligated by the terms of its policy statement to decline the requested designation.

This case is similar to *Del Guzzi v. United States,* 980 F.2d 1269 (9th Cir. 1992).[7] There the defendant pled guilty to counterfeiting charges in federal court and

---

**6.** For example, a designation at some time later than the initial imposition might make sense when "primary jurisdiction resided with the state, and the court mistakenly believed that the inmate was in Federal custody for service of the Federal sentence on the date of imposition." BOP Policy Statement § 5160.04(9)(c). In that case the BOP may exercise its discretion to avoid a result unintended by the federal sentencing judge.

**7.** Taylor argues that reliance on *Del Guzzi* is misplaced because that case involved sentences governed by 18 U.S.C. § 3586 (1982),

which has been repealed and replaced with 18 U.S.C. § 3585. The old statute contained the prohibition that "[n]o sentence shall prescribe any other method of computing the term [of imprisonment]," whereas the new statute does not. Taylor argues that based on this deletion, when a state sentence prescribes how a term of imprisonment will run, there is now no statutory prohibition against deferring to that sentence. Taylor cites to no cases to support his position and we reject it. Moreover, in *Del Guzzi* we did not rely on the statutory phrase that has been deleted.

was sentenced to a five-year term. *Del Guzzi*, 980 F.2d at 1270. The sentencing judge ordered the defendant to self-surrender to federal officials the next month. *Id.* Before he was due to turn himself in, the defendant was arrested and charged with a California drug violation. *Id.* He pled guilty and the state court judge sentenced him to a seven-year term, to run concurrently with the pending five-year federal term. *Id.* The state judge recommended that the defendant be transported to federal prison to serve his concurrent terms. *Id.* Federal officials declined to accept him, on the ground that they would take custody of the defendant only upon completion of his state sentence. *Id.* After Del Guzzi completed his state sentence, he immediately began petitioning federal prison officials to credit his state time against his federal sentence. *Id.* His requests were consistently denied. *Id.* After exhausting his administrative remedies, Del Guzzi brought a *pro se* habeas petition which the district court denied. *Id.* We affirmed the denial of habeas relief. *Id.* at 1271. In his concurrence, Judge Norris explained:

> Federal prison officials are under no obligation to, and may well refuse to, follow the recommendation of state sentencing judges that a prisoner be transported to a federal facility. Moreover, concurrent sentences imposed by state judges are nothing more than recommendations to federal officials. Those officials remain free to turn those concurrent sentences into consecutive sentences by refusing to accept the state prisoner until the completion of the state sentence and refusing to credit the time the prisoner spent in state custody.

*Del Guzzi*, 980 F.2d at 1272–73 (Norris, J. concurring).

We agree with and adopt this reasoning. The BOP was under no obligation to follow the allegedly expressed wishes of the state court and the BOP's actions in this case were not arbitrary or capricious.

### III.

#### A. Dual Sovereignty

■ Taylor argues that the federal administrative action, which did not give effect to the state sentence he contends was concurrent,[8] violates the doctrine of dual sovereignty.

■ In assessing the execution of state and federal criminal sentences, we have said that our federal system is one of "dual sovereignty," and not one in which the Supremacy Clause controls sentencing. *Strand v. Schmittroth*, 251 F.2d 590, 605 (9th Cir.1957) ("[T]here is no 'federal supremacy' in the corner of the field which is specifically under consideration"). In sentencing those within their jurisdiction, the state and federal governments must be viewed as equal sovereigns.

> We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory. It would be impossible for such courts to fulfill their respective functions without embarrassing conflict unless rules were adopted by them to avoid it. The people for whose benefit these two systems are maintained are deeply interested that each system shall be effective and unhindered in its vindication of its laws. The situation requires, therefore, not only definite rules fixing the powers of the courts in cases of jurisdiction over the same persons and things in actual litigation, but also a spirit of reciprocal comity and mutual

---

8. *See* Footnote 4 above.

assistance to promote due and orderly procedure.

*Ponzi v. Fessenden,* 258 U.S. 254, 259, 42 S.Ct. 309, 66 L.Ed. 607 (1922).

Taylor purports to recognize that "[u]nder the dual sovereignty doctrine, a criminal defendant owes a debt to two (or more) separate sovereigns, each of which may exact payment independently of the other. *See, e.g., Heath v. Alabama,* 474 U.S. 82, 88–93, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985); *Jackson v. Brennan,* 924 F.2d 725, 729 (7th Cir.1991)." Taylor also acknowledges that the dual sovereignty doctrine has been held by another circuit to be justification for the BOP's refusal to give inmates credit against their federal sentences for time served in a state or foreign prison. *See, e.g., Kendrick v. Carlson,* 995 F.2d 1440, 1445–46 (8th Cir.1993). But contrary to this authority, Taylor argues that under the dual sovereignty doctrine the BOP must give effect to a state sentence that is ordered to run concurrently with a pre-existing federal sentence. In this contention Taylor is completely mistaken.

■ The federal system under the dual sovereignty doctrine has full power to set punishment for crimes against the federal sovereign. So long as consistent with the federal Constitution, federal statutory and regulatory power to punish for federal crime is not constrained at all by state power. If a state court were allowed to force a federal court to run its federal sentence concurrent to a state sentence, the state would clearly be encroaching on the federal court's right to "exact payment independent of" the state. Taylor's position is not supported by the dual sovereignty doctrine; to the contrary, his novel contention would offend and erode the doctrine of dual sovereignty. We hold that the federal administrative action by the BOP in not giving effect to a state sentence of Taylor, if assumed to be a sentence that the state wanted to run concurrent to the federal sentence, does not violate the doctrine of dual sovereignty.

## B. Comity and Federalism

■ Taylor next argues that principles of comity and federalism combine to require that Oregon's request for concurrent sentences time be honored. Taylor contends correctly that we have held that when a federal court imposes its sentence first, it has no authority to order that sentence to run either consecutively or concurrently to a state sentence which had not yet been imposed. Such an act would "preempt the right of the state to apply its own laws on sentencing for violation of state criminal laws." *United States v. Eastman,* 758 F.2d 1315, 1317–1318 (9th Cir.1984) (remanding for resentencing where defendant received a sentence in federal court to a five-year term to run consecutively "to any sentence that the defendant receives from the State of California"). From this, Taylor argues incorrectly that the BOP, in administering a federal sentence, should not be allowed to disregard a state court's alleged order of concurrency. Taylor contends that the challenged federal agency action governing Taylor's federal imprisonment is preempting what he claims are rights of the state court. However, Taylor's argument has no persuasive support in constitutional principle, consistent practice or established case law.

■ In our federal system, state courts are not constitutionally empowered to control punishment for federal crimes, nor have our states and federal government ever recognized such a practice. As an example, in *Del Guzzi,* we explicitly held that the BOP does not need to abide by a state's express desire to have its sentence run concurrent to a previously imposed

federal sentence.[9] *Del Guzzi*, 980 F.2d at 1270. In his concurrence, consistent with the majority opinion, Judge Norris stated that a state judge's imposition of a concurrent sentence is nothing more than a recommendation to federal officials that federal officials are free to disregard. *Del Guzzi*, 980 F.2d at 1272–73 (Norris, J. concurring).

We agree with this reasoning. Forcing the federal judiciary to adhere to the wishes of the state courts regarding punishment of those in federal jurisdiction because of federal crime would impinge on the rights of the federal judiciary to apply its own sentencing laws for violation of federal criminal laws. Taylor's argument has no merit.

### C. Full Faith and Credit

Taylor also argues that the failure of the BOP and the district court to use available procedures to give effect to the state court judgment allegedly requiring concurrent sentences[10] violates the Full Faith and Credit Clause.

Article IV, Section 1, of the United States Constitution provides that:

> Full Faith and Credit shall be given each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

The literal language of this ancient guarantee in our Constitution leaves no ambiguity on the point urged by Taylor. The first sentence of this guarantee is clear that it does not bind the federal government but the many states. In context, it is each of our fifty states who must give full faith and credit to the acts of the other states. The purpose of this clause was evidently to ensure a measure of unity for the United States by requiring each formerly independent State to respect and give credit to the judgments of the others. By its terms, and in light of its purpose, the Full Faith and Credit Clause imposes no obligation whatsoever on the federal government. *See Baker v. Gen. Motors Corp.*, 522 U.S. 222, 232–34, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998); *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) ("The Full Faith and Credit Clause is of course not binding on federal courts ...."). The Full Faith and Credit Clause is not violated if the BOP, a federal government agency, chooses not to give effect to a state court judgment requiring concurrent sentences.

The second sentence of Article IV, Section 1, however, authorizes Congress to adopt federal statutes that may implement, if not elaborate on, the Full Faith and Credit Clause. Pursuant to this authority, the first Congress implemented and extended the Full Faith and Credit Clause in the Act of May 26, 1790, ch. 11, 1 Stat. 122 (the "Act"). The Act provides that duly authenticated records and judicial proceedings of the courts of any state would have "such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the state from whence the said records are or shall be taken." The Act thus binds federal courts.

However, it has been held that the Act does not apply to federal executive branch agencies and to courts reviewing

---

9. As discussed in footnote 7, Taylor erroneously argues that reliance on *Del Guzzi* is misplaced because that case involved sentences governed by 18 U.S.C. § 3586 (1982), which has been repealed and replaced with 18 U.S.C. § 3585.

10. *See* Footnote 4 above.

cases in which the relief sought is an order for an action by a federal executive agency. *See NLRB v. Yellow Freight Sys., Inc.*, 930 F.2d 316, 320 (3d Cir.1991). Further, as the Supreme Court has explained recently, although the full faith and credit doctrine applies to the recognition of civil judgments, it does not apply to either enforcement measures arising from civil judgments or the operation of state statutes. *Baker*, 522 U.S. 222, 118 S.Ct. 657, 139 L.Ed.2d 580 (holding that a federal court in Missouri was not obligated to give full faith and credit to a consent judgment entered by a Michigan state court). In resolving *Baker*, the Supreme Court concluded that one state's judgment cannot be used to control litigation in other courts absent both parties having been before the court in both litigations. *Id.* at 239, 118 S.Ct. 657.

It follows, under *Baker*, that federal courts do not have an obligation, as a matter of full faith and credit, to enforce a state court criminal judgment because the United States is generally not a party to the state criminal proceeding. State and federal criminal prosecutions involve distinct parties, and consequently the enforcement of a state criminal judgment is not required when that enforcement would intrude upon the execution of a distinct federal criminal judgment.

We hold that the Act does not apply to an attempt to enforce a state criminal sentence to limit a federal sentence for a federal crime. This is so because the state sentence is based on a state prosecution in which the federal government, including its Bureau of Prisons (a federal executive agency), was not and could not have been a party.[11] Neither the Full Faith and Credit Clause of the United States Constitution nor the Act of May 26, 1790, was violated in this case.

## CONCLUSION

The policy statement relied on by the BOP is not inconsistent with federal law and the BOP's decision not to grant *nunc pro tunc* designation was not arbitrary or capricious. The principles of dual sovereignty and comity and federalism do not support Taylor's position. Nor does the Full Faith and Credit Clause provide grounds for Taylor's claim.

**AFFIRMED.**

**11.** Also, as a general rule criminal judgments are not entitled to full faith and credit because no State is bound to enforce the penal laws of another State or to punish a person for a wrong committed against it. *See Nelson v. George*, 399 U.S. 224, 229, 90 S.Ct. 1963, 26 L.Ed.2d 578 (1970) (the Full Faith and Credit Clause does not require that a sister state enforce a foreign penal judgment). The reason is that each sovereign is free to determine what conduct shall be proscribed within its jurisdiction, and the wrong committed by violating such proscription is local and does not transcend the sovereignty. The United States Supreme Court has held that States can deny recognition to judgments issued by another State which assess penalties against a criminal defendant. *See e.g. Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 290, 8 S.Ct. 1370, 32 L.Ed. 239 (1888) *overruled on other grounds by Milwaukee County v. M.E. White Co.*, 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220 (1935). Applying this general rule, courts have held that a State need not give full faith and credit to another jurisdiction's directive that sentences run concurrently. *See People v. Alba*, 189 Misc.2d 258, 730 N.Y.S.2d 191, 199 (N.Y.Sup.Ct.2001); *Chalifoux v. Commissioner of Corr.*, 375 Mass. 424, 377 N.E.2d 923, 926 (1978); *Breeden v. New Jersey Dep't of Corr.*, 132 N.J. 457, 625 A.2d 1125, 1128–29 (1993). This principle—that the full faith and credit doctrine does not require recognizing limitations on criminal sentencing power—also requires rejection of Taylor's claim under the Full Faith and Credit Clause.