FLOYD, Circuit Judge, concurring in part and dissenting in part:
 

 I join with all parts of the majority opinion save one: I disagree with my colleagues' conclusion that the district court had the discretion to make no decision at all on whether Lynn's federal sentence would run concurrently with his anticipated state sentence. I would hold that because U.S.S.G. § 5G1.3 was a "pertinent Sentencing Commission policy statement,"
 
 United States v. Olmeda
 
 ,
 
 894 F.3d 89
 
 , 93 (2d Cir. 2018) (quoting
 
 United States v. Cavera
 
 ,
 
 550 F.3d 180
 
 , 188-89 (2d Cir. 2008) (en banc) ), the district court was required to decide whether to adopt § 5G1.3's recommendation that Lynn's sentences run concurrently. That is, the district court had the discretion either to follow or depart from the Sentencing Commission's recommendation on concurrency. But the district court did not have the discretion to make no decision on concurrency at all. Therefore, I respectfully dissent as to Part II.B of the majority opinion.
 

 I.
 

 Lynn's federal sentencing hearing took place before his pending state charges were resolved. During the sentencing, the government raised U.S.S.G. § 5G3.1(c) and its recommendation that Lynn's federal sentence run concurrently with his anticipated state sentence. Both government and defense counsel argued that § 5G3.1(c) applied and that at least a portion of Lynn's federal sentence should run concurrently with his anticipated state sentence.
 

 In response, the district court stated that it was "terribly difficult" to calculate how much of Lynn's federal sentence should run concurrently with a yet-to-be-determined state sentence. J.A. 153. The length of Lynn's future state sentence could vary widely, from a relatively short sentence for aggravated assault to a far longer sentence for attempted murder. Should Lynn receive a short sentence, the court was "not sure" that it wanted any of the federal sentence to be served concurrently with the state sentence. J.A. 154. If, however, Lynn received a long state sentence, the court believed that "in fairness, the circumstances might merit some overlapping" of the sentences.
 
 Id
 
 .
 

 The district court then opined that it need not decide the § 5G3.1(c) question because "ultimately, the Bureau of Prisons has the authority to come back in and handle [this situation] through one of those retroactive designations." J.A. 153. When defense counsel expressed confusion regarding what the court meant by retroactive designations, the court replied: "When an individual does finally arrive at the Bureau of Prisons," meaning after the defendant has served his state sentence and is transferred to federal custody to serve his federal sentence for related conduct, "there is an administrative process where [offenders] can apply and ask for that overlap - the overlapping sentences to be taken into consideration and the Bureau of Prisons backdate the start of the federal sentence to some date during the state sentence that's been served." J.A. 156. When such a request is made, the district court continued, "I usually get a letter that asks for my position on that, and if it is truly a circumstance where there was
 overlapping conduct that enhanced both sentences, I usually tell that to the Bureau of Prisons, but I don't know what they do with that once I've made my comment."
 
 Id
 
 .
 

 Ultimately, the district court declined to decide whether to apply § 5G3.1(c)'s recommendation that Lynn's sentences be served concurrently, stating:
 

 I am not able to make a determination as to how much of this sentence should be imposed to run concurrently with the state court prosecution that is now pending. Certainly, to the extent Mr. Lynn was ultimately either found guilty or pled guilty to an attempted second-degree murder [in state court], there would be significant overlap between these two sentences that are imposed in this case, but, ultimately ... should Mr. Lynn ultimately be convicted of a [weapons possession] offense or some other offense, I would not be inclined to run any of this sentence concurrent to the sentence that may be imposed in state court. Therefore, at this time I will
 
 decline to make a finding with respect to running any part of this sentence concurrently
 
 to any sentence imposed in the state court.
 

 J.A. 159 (emphasis added). I thus disagree with my colleagues in the majority to the extent that they understand the district court's ruling as a decision to not adopt § 5G3.1(c)'s concurrency recommendation. Rather, we are faced here with a case in which the district court refrained from making any decision at all on a pertinent Sentencing Guideline.
 

 II.
 

 The Bureau of Prisons' (BOP) role in making concurrency determinations serves as important background here. The BOP is empowered by statute to decide where federal inmates serve their sentences.
 
 18 U.S.C. § 3621
 
 (b) (2012). When making that determination, the BOP may "designate any available penal or correctional facility that meets minimum standards ... whether maintained by the Federal Government or otherwise."
 
 Id
 
 . Thus, "when a federal defendant is already serving a state sentence, BOP has the practical power to 'make the federal sentence run concurrently by designating the state prison as a place of federal confinement, so that the clock would start to tick on the federal sentence.' "
 
 Fegans v. United States
 
 ,
 
 506 F.3d 1101
 
 , 1103 (8th Cir. 2007) (quoting
 
 Romandine v. United States
 
 ,
 
 206 F.3d 731
 
 , 738 (7th Cir. 2000) ). Congress's grant of power to the BOP to select a place of confinement for federal prisoners has therefore become a de facto power to determine whether a federal sentence will be served concurrently with a state sentence.
 

 When a district court has made the concurrency determination already, the BOP enforces the court's order.
 
 See
 
 BOP Program Statement 5160.05 ¶ 7 ("When a federal judge orders or recommends a federal sentence run concurrently with a state sentence already imposed, the Bureau implements such order or recommendation ....");
 
 Fegans
 
 ,
 
 506 F.3d at 1105
 
 . When, however, a federal judge fails to make a concurrency determination, the BOP refers to
 
 18 U.S.C. § 3584
 
 (a), which states:
 

 If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively .... Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless
 the court orders that the terms are to run concurrently.
 

 See
 

 Mangum v. Hallembaek
 
 ,
 
 824 F.3d 98
 
 , 101-02 (4th Cir. 2016) (explaining the BOP's reliance on
 
 18 U.S.C. § 3584
 
 ). Hence, when a district court is silent as to whether a sentence should be served concurrently with or consecutively to another sentence, the BOP uses § 3584(a) to fill in the gaps.
 

 The plain text of § 3584(a), however, contains its own gap: It says nothing about whether a district court may order a federal sentence to be served concurrently with a yet-to-be-imposed state sentence.
 
 [1]
 
 After § 3584(a) was enacted, some circuits interpreted that gap to mean that district courts
 
 could not
 
 order a federal sentence to be served concurrently with a yet-to-be-imposed state sentence.
 
 See
 

 Abdul-Malik v. Hawk-Sawyer
 
 ,
 
 403 F.3d 72
 
 , 75-76 (2d Cir. 2005) (collecting cases);
 
 Fegans
 
 ,
 
 506 F.3d at 1104
 
 (noting existence of circuit split). In those circuits, a pragmatic problem arose: once the state sentence was imposed, who
 
 could
 
 decide whether the federal sentence would run concurrently or consecutively? The Third Circuit was the first to address that question and held that the BOP should fill this void by reviewing applications from prisoners who had been transferred to federal custody after serving a state sentence, and then deciding whether the federal sentence should run concurrently or consecutively with the state sentence through a
 
 nunc pro tunc
 
 designation.
 
 Barden v. Keohane
 
 ,
 
 921 F.2d 476
 
 , 480-81 (3d Cir. 1990). Subsequently, multiple federal courts of appeals followed the Third Circuit's lead.
 
 Fegans
 
 ,
 
 506 F.3d at
 
 1104 ;
 
 Mangum
 
 ,
 
 824 F.3d at
 
 101-02 ;
 
 Abdul-Malik
 
 ,
 
 403 F.3d at
 
 75-76 ;
 
 Taylor v. Sawyer
 
 ,
 
 284 F.3d 1143
 
 , 1149 (9th Cir. 2002) ;
 
 Romandine
 
 ,
 
 206 F.3d at
 
 738 ;
 
 McCarthy v. Doe
 
 ,
 
 146 F.3d 118
 
 , 122 (2d Cir. 1998).
 

 In 2012, the U.S. Supreme Court closed the gap in § 3584(a), holding that district courts have the inherent authority to order that federal sentences be served concurrently with anticipated state sentences.
 
 Setser v. United States
 
 ,
 
 566 U.S. 231
 
 , 237-39,
 
 132 S.Ct. 1463
 
 ,
 
 182 L.Ed.2d 455
 
 (2012). Soon after
 
 Setser
 
 , U.S.S.G. § 5G1.3(c), which advises district court judges to make federal sentences concurrent with not-yet-imposed state sentences for related conduct, was added to the Guidelines.
 
 See
 

 Olmeda
 
 ,
 
 894 F.3d at 92-93
 
 (describing history). The commentary to § 5G1.3(c) states:
 

 This amendment is a .... response to the Supreme Court's decision in
 
 Setser
 
 .... [It] reflects the Commission's determination that the concurrent sentence benefits of subsection (b) of § 5G1.3 should be available not only in cases in which the state sentence has already been imposed at the time of federal sentencing (as subsection (b) provides), but also in cases in which the state sentence is anticipated but has not yet been imposed .... By requiring courts to impose a concurrent sentence in these cases, the amendment reduces disparities between defendants whose state sentences have already been imposed and those whose state sentences have not yet been imposed.
 

 U.S.S.G. § 5G1.3, Historical Notes, 2014 Amendments.
 

 Setser
 
 and § 5G1.3 eliminated the pragmatic problem that originally led to the BOP's power to make concurrency determinations. Nevertheless, the BOP has continued to make concurrency determinations in cases where district courts have neglected to do so.
 
 See, e.g.
 
 ,
 
 Mangum
 
 ,
 
 824 F.3d at 99
 
 (deciding a 2016 challenge to the BOP's refusal to grant an inmate a
 
 nunc pro tunc
 
 designation that his federal sentence had started while he was in state custody). The district court in this case relied upon the BOP's ongoing practice of making concurrency determinations to justify its refusal to decide whether § 5G1.3(c) should apply to Lynn's sentence.
 

 III.
 

 The BOP originally assumed the power to make concurrency determinations for defendants, like Lynn, who faced a later-imposed state sentence because § 3584(a) left a void that some district courts were forbidden to fill. Post-
 
 Setser
 
 , that void no longer exists, which brings the troubling implications of the BOP's practice to the forefront: The BOP is exercising a power that clearly belongs to the judiciary. Additionally, since the Guidelines have been amended post-
 
 Setser
 
 to include § 5G1.3(c)'s recommendation that defendants in Lynn's position should serve concurrent sentences, district courts have an obligation, as part of their mandatory consideration of all relevant Guidelines, to decide whether they will accept § 5G1.3(c)'s recommendation during sentencing. The district court did not do so here, and so I would reverse.
 

 Setser
 
 squarely addressed whether the concurrent-versus-consecutive decision rests with the BOP or the judiciary. In
 
 Setser
 
 , a defendant was indicted for drug charges in both state and federal court.
 
 Setser
 
 ,
 
 566 U.S. at 233
 
 ,
 
 132 S.Ct. 1463
 
 . Setser received his federal sentence first, and the district court ruled that his federal sentence would run concurrently with any state sentence he received for his drug charge, but consecutive to any future state sentence he would receive for a then-outstanding probation violation.
 
 Id
 
 . Setser appealed, arguing that the district court lacked the power to make that concurrency determination because the case fell into the above-described § 3584(a) gap.
 
 Id
 
 . at 234-35,
 
 132 S.Ct. 1463
 
 . Specifically, he argued that the § 3584(a) gap meant that any concurrency determination should be left exclusively to the BOP through its
 
 nunc pro tunc
 
 designation process, as district courts lacked any power not explicitly granted by § 3584(a).
 
 Id
 
 . at 235,
 
 132 S.Ct. 1463
 
 . The Supreme Court disagreed:
 

 That is an odd parsing of [ § 3584 ], which makes no distinction between the district court and the Bureau of Prisons. The placement of § 3584 does indeed suggest that it is directed at district courts-but
 
 that is likely because Congress contemplated that only district courts would have the authority to make the concurrent-vs.-consecutive decision
 
 , not because Congress meant to leave the Bureau unfettered. Indeed, the Bureau already follows the other directives in § 3584(a). For example, if the district court imposes multiple terms of imprisonment at the same time, but fails to address the concurrent-vs.-consecutive issue, the terms "run concurrently," [as provided by] § 3584(a), and the Bureau is not free to use its "place of imprisonment" authority to achieve a different result.
 

 Id
 
 . at 237-38,
 
 132 S.Ct. 1463
 
 (citations omitted) (emphasis added). The Court went on to explain that, by relying on the maxim of
 
 expressio unius est exclusion alterius
 
 , or the explicit mention of one thing is the exclusion of another,
 

 Setser ... suggests that, because § 3584(a) recognizes judicial discretion in scenario
 
 A
 
 and scenario
 
 B,
 
 there is no such discretion in scenario
 
 C
 
 . But the same maxim shows much more convincingly why § 3621(b) [which grants the BOP the power to designate state prisons as a federal inmate's place of confinement] cannot be read to give the Bureau of Prisons exclusive authority to make the sort of decision committed to the district court in § 3584(a). When § 3584(a) specifically addresses decisions about concurrent and consecutive sentences, and makes no mention of the Bureau's role in the process, the implication is that no such role exists. And that conclusion is reinforced by application of the same maxim (properly, in this instance) to § 3621(b) -which
 
 is
 
 a conferral of authority on the Bureau of Prisons, but does not confer authority to choose between concurrent and consecutive sentences.
 
 Put to the choice, we believe it is much more natural to read § 3584(a) as not containing an implied "only," leaving room for the exercise of judicial discretion in the situations not covered, than it is to read § 3621(b) as giving the Bureau of Prisons what amounts to sentencing authority
 
 .
 

 Id
 
 . at 238-39,
 
 132 S.Ct. 1463
 
 (second emphasis added).
 

 While the
 
 Setser
 
 Court held that district courts have the authority to decide that a federal sentence should run concurrently with an anticipated state sentence, it stopped short of deciding that the BOP's decades-old
 
 nunc pro tunc
 
 designation process is itself unlawful. It did, however, express concern about giving sentencing authority to a federal agency.
 
 Id
 
 . at 239, 242 n.5,
 
 132 S.Ct. 1463
 
 . Such concern has been echoed by other Courts of Appeals. The Second Circuit, for example, has explained that "[a] separation of powers issue arises when the same branch of government that prosecutes federal prisoners determines concurrency in lieu of the judge."
 
 Abdul-Malik
 
 ,
 
 403 F.3d at
 
 76 ;
 
 see also
 

 Fegans
 
 ,
 
 506 F.3d at 1104
 
 ("[W]e agree with the Second Circuit that Congress should examine the [BOP's practice of making concurrency determinations] because it implicates important federalism and separation of powers concerns[.]"). I agree that the BOP's practice raises troubling separation-of-powers concerns.
 

 IV.
 

 Although district courts are not mandated to comply with the recommendations in the Guidelines, they still "must give due consideration" to any relevant Guideline policy statements and explain any deviation therefrom.
 
 United States v. Engle
 
 ,
 
 592 F.3d 495
 
 , 502-04 (4th Cir. 2010). Section 5G1.3(c) was a "pertinent Sentencing Commission policy statement" at Lynn's sentencing, so it should have been "take[n] into account."
 
 Olmeda
 
 ,
 
 894 F.3d at 93
 
 (quoting
 
 Cavera
 
 ,
 
 550 F.3d at
 
 188-89 );
 
 18 U.S.C. § 3553
 
 (a)(5) (2012) (listing "pertinent policy statement[s]" as a factor that sentencing judges must consider). However, while the district court acknowledged § 5G1.3(c)'s existence, heard argument on it, and discussed its application at some length during the sentencing hearing, the district court ultimately decided to neither adopt nor reject the Guidelines' recommendation. Typically, this result would not be possible: When imposing a federal sentence, district courts necessarily decide whether to accept or reject the pertinent Sentencing Guidelines whenever they decide the length of a sentence. Section 5G1.3(c), however, uniquely provides an opportunity to make no decision at all because a district court's failure to rule in situations where § 5G1.3(c) applies creates no presumption one way or another regarding whether the prisoner's two sentences should be served concurrently.
 
 See
 

 Mangum
 
 ,
 
 824 F.3d at 101-02
 
 . The decision is simply left to the BOP.
 

 The majority opines that
 
 Setser
 
 already acknowledged and condoned the very same failure to decide that occurred here, citing the footnote in which the Supreme Court states: "Of course, a district court should exercise the power to impose anticipatory consecutive (or concurrent) sentences intelligently. In some situations,
 
 a district court may have inadequate information and may forbear
 
 , but in other situations, that will not be the case."
 
 Setser
 
 ,
 
 566 U.S. at
 
 243 n.6,
 
 132 S.Ct. 1463
 
 (emphasis added). This language, however, was written before the U.S. Sentencing Commission adopted § 5G1.3(c). It does not change the district court's obligation to rule on each pertinent Sentencing Guideline.
 

 Criminal sentencing has been entrusted to the judicial branch, and deciding whether multiple sentences should run concurrently is intrinsically a determination of the length of imprisonment. Such decisions should be made by the district court just like any other determination about the number of months that a defendant will serve. Therefore, the district court's failure to rule on § 5G1.3(c)'s applicability to Lynn's sentence punts the determination on the length of his sentence to the BOP. That result is an inappropriate delegation of the courts' judicial power, and I must dissent.
 

 V.
 

 Because U.S.S.G. § 5G1.3 is a pertinent Sentencing Commission policy statement, the district court was required to decide whether to adopt its recommendation that Lynn's sentences run concurrently. It erred in leaving that decision to the BOP. I therefore respectfully dissent.
 

 When § 3584(a)'s final sentence refers to "[m]ultiple terms of imprisonment imposed at different times," it means the situation described in the first sentence, where a second prison term is "imposed on a defendant who is already subject to an undischarged term of imprisonment."
 
 Setser v. United States
 
 ,
 
 566 U.S. 231
 
 , 234-35,
 
 132 S.Ct. 1463
 
 ,
 
 182 L.Ed.2d 455
 
 (2012). Section 3584(a) does not address the situation here, where the federal sentence was imposed before the state sentence.